723 So.2d 1175 (1998)
Harry ANDREWS, Appellant,
v.
Carolyn Andrews WILLIAMS, Appellee.
No. 97-CA-00453 COA.
Court of Appeals of Mississippi.
November 24, 1998.
*1176 Jennifer H. Edwards, Attorney for Appellant.
Ronald M. Kirk, Flora, Attorney for Appellee.
Before McMILLIN, P.J., DIAZ, and PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. Carolyn Williams received a divorce from Harry Andrews on the grounds of irreconcilable differences by decree of the Holmes County Chancery Court, the Honorable Edward G. Cortright, Jr. presiding, on December 1, 1983. From this decree, Carolyn was awarded custody of the couple's two minor children and $200 per month in child support. In addition, Harry was ordered to pay $125 per month to Crugar-Tchula Academy for tuition for Harry, Jr. (a.k.a. Jeff).
¶ 2. On April 8, 1996, Carolyn filed the present Complaint for Citation for Contempt and Petition for Modification of Former Judgment. Having been found in contempt and upon adverse modification of the decree, Harry appeals the judgment of the Holmes County Chancery Court asserting the following five issues:
I. WHETHER THE CHANCELLOR ERRED IN DISREGARDING PROOF OF HARRY ANDREWS'S PAYMENT OF CHILD SUPPORT.
II. WHETHER THE CHANCELLOR ERRED IN FAILING TO ADJUDICATE JEFF ANDREWS AN EMANCIPATED ADULT.
III. WHETHER THE CHANCELLOR ERRED IN REFUSING TO APPLY THE EQUITABLE DEFENSE OF LACHES AGAINST CAROLYN ANDREWS WILLIAMS TO THE ISSUE OF THE TUITION FOR JEFF'S ATTENDANCE AT CRUGAR-TCHULA ACADEMY.
IV. WHETHER THE CHANCELLOR ERRED IN REFUSING TO ALLOW LETTERS FROM THE DEPARTMENT OF HUMAN SERVICES INTO EVIDENCE UNDER MISSISSIPPI RULE OF EVIDENCE 803(24).
V. WHETHER THE CHANCELLOR ERRED IN AWARDING CAROLYN ANDREWS WILLIAMS ATTORNEY'S FEES.
*1177 Upon review of legal precedent and the record, we affirm the lower court in all respects.

FACTS
¶ 3. Harry Andrews and Carolyn Andrews Williams were married in 1977. This union produced two children, a son, Harry Andrews, Jr. (a.k.a. Jeff) and a daughter, Stacy Andrews. On December 1, 1983, Harry and Carolyn were divorced and custody of Jeff and Stacy was awarded to Carolyn. Subsequently, Carolyn filed a Petition for Citation of Contempt on September 8, 1989, alleging that Harry was $3,900 in arrears for partial child support for the years 1987-1989; this Petition was eventually dismissed for want of prosecution on June 18, 1992.
¶ 4. In 1996, Carolyn filed the Complaint at issue here, seeking to have Harry held in contempt and to have the original divorce decree modified for an increase in child support. In her pleadings, Carolyn alleged that Harry was in arrears in child support the sum of $9,300, and that he had failed to pay the tuition costs for Jeff at Cruger-Tchula Academy amounting to $3,375. Carolyn also sought attorney's fees from Harry. Included in the same complaint was a Petition for Modification of Former Judgment. Here, Carolyn sought an increase in child support from $200 per month to $450 per month, payment by Harry of one-half of non-covered medical expenses incurred by Jeff and Stacy, payment by Harry of all educational expenses incurred by Jeff and Stacy for their post-secondary education,[1] carrying by Harry of a $100,000 life insurance policy with Jeff and Stacy as irrevocable beneficiaries, and attorney's fees because of Harry's refusal to voluntarily agree to these modifications in the decree.
¶ 5. Harry denied any arrearage in child support or tuition payments and alleges that Jeff is now an emancipated adult with a full-time job and no plans to attend college; therefore, Harry should not be responsible for Jeff's support. Additionally, Harry claimed that he had attempted to put Stacy on his medical insurance policy, but Carolyn would not cooperate with these efforts. Finally, Harry sought to have the original decree modified to reduce child support payments to fourteen percent of his adjusted gross income to be paid for Stacy's benefit until she becomes emancipated.
¶ 6. After a trial, the chancellor found Harry in contempt for failing to pay child support in the amount of $7,400 plus eight percent interest, failing to pay Jeff's tuition expenses at Cruger-Tchula Academy in the amount of $3,000 plus eight percent interest, $1,250 in attorney's fees for Carolyn, and increased child support to $320 per month. Additionally, the court did not find that Jeff was emancipated; however, the judge refused to order support for post-secondary education until Jeff actually enrolls in a college program. The citations for back child support and Jeff's tuition expenses were ordered paid at a rate of $100 per month. Attorney's fees were ordered paid within 120 days.

STANDARD OF REVIEW
¶ 7. The standard of review employed by this Court in domestic relations cases is abundantly clear. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997); Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss.1993); Gregg v. Montgomery, 587 So.2d 928, 931 (Miss.1991).

ANALYSIS AND DISCUSSION OF LAW

I. WHETHER THE CHANCELLOR ERRED IN DISREGARDING PROOF OF HARRY ANDREWS'S PAYMENT OF CHILD SUPPORT.
¶ 8. As his first assignment of error, Harry argues that the chancellor's award of $7,400 plus eight percent interest to Carolyn *1178 was not supported by substantial evidence and was therefore manifest error. Carolyn's claims for back child support were as follows:

1987 - $1,000
1988 - $1,800
1989 - $1,100
1990 - $2,400
1991 - $1,100

Carolyn's calculations were based largely on her memory. Her testimony reflected that the extent of her records was a wall calendar on which she recorded each of Harry's payments. At the end of each year, she would file the calendar in her personal file cabinet. However, her calendar records have been destroyed.[2]
¶ 9. Harry testified that he paid $2,400 in child support in 1987, albeit late in some instances.[3] Harry testified that Jeff lived with him in 1988; therefore, he paid child support on Stacy only, or $1,200. In 1989 and 1990, Harry testified that he paid a total of $4,800 in child support by money order. For 1991, Harry produced bank receipts for $1,330 in child support; he testified that the balance of support for that year was paid by money order.
¶ 10. As stated, our scope of review is limited. Here, the chancellor, after taking testimony from both Harry and Carolyn, determined that Carolyn's assessment of the arrearage was the more accurate. The chancellor was in the best position to access the credibility of the witnesses and their respective testimony regarding the matters at issue. As is well-established, the chancellor is vested with assessment of witness credibility, and "the interpretation of evidence where it is capable of more than one reasonable interpretation...." Crow v. Crow, 622 So.2d 1226, 1229 (Miss.1993); Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967).
¶ 11. Harry argues that Carolyn did not present sufficient proof of his non-payment of child support. The Mississippi Supreme Court has held that while calculations with regard to amounts of child support arrearages may be "vague and imprecise, the chancellor's findings will not be disturbed where, as here, there was no other direct evidence as to the amount due." Brown v. Gillespie, 465 So.2d 1046, 1047 (Miss.1985). While the letter Harry received from Carolyn's attorney, Joel Henderson, in 1993 indicated that he was delinquent by only $600, this letter, as established by Carolyn, was not intended to include all arrearages. Harry, of course, would have us find that this letter is dispositive of his arrearage. However, the chancellor weighed this evidence with the testimony and found that the $7,400 figure was an accurate assessment of arrearage. Finding no manifest error, we must sustain the award.

II. WHETHER THE CHANCELLOR ERRED IN FAILING TO ADJUDICATE JEFF ANDREWS AN EMANCIPATED ADULT.
¶ 12. As his second assignment of error, Harry argues that the chancellor erred in not finding that Jeff Andrews was an emancipated adult under Section 93-5-23 of the Mississippi Code of 1972. The relevant portion of the Code section follows:
The duty of support of a child terminates upon the emancipation of the child. The court may determine that emancipation has occurred and no other support obligation exists when the child:
(a) Attains the age of twenty-one (21) years, or
(b) Marries, or
(c) Discontinues full-time enrollment in school and obtains full-time employment *1179 prior to attaining the age of twenty-one (21) years, or
(d) Voluntarily moves from the home of the custodial parent or guardian and establishes independent living arrangements and obtains full-time employment prior to attaining the age of twenty-one (21) years.
Miss.Code Ann. § 93-5-23 (Supp.1998). Harry argues that Jeff was emancipated under subsection (c) of § 93-5-23 because he graduated from high school and obtained full-time employment.
¶ 13. Testimony at trial indicated that upon graduation from high school in 1995, Jeff moved to Gulfport to live with Harry. While there, he was employed at K-Mart. After two months, Jeff and Harry had a falling out, and Jeff moved back to Jackson to live with Carolyn. At the time of the trial, Jeff was employed by his maternal uncle and earning a net pay of $185 per week. Both Carolyn and Jeff testified that Jeff's earnings prevented his establishing an independent residence of his own. Jeff was responsible for a pick-up truck payment and insurance on the vehicle as well as some other personal debts. Harry testified that he assumed that Jeff was an adult when he turned eighteen, and he took it upon himself to reduce his child support payments to Carolyn by one-half at that time.
¶ 14. The issue of a minor's emancipation has been defined by the Mississippi Supreme Court as a freeing of the minor "from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss.1991); Pass v. Pass, 238 Miss. 449, 454, 118 So.2d 769, 771 (Miss.1960). We cannot say that Jeff meets the requirements for emancipation. While Jeff meets the requirements of the statute under subsection (c), he does so only in the most technical sense. As a practical matter, Jeff is unable to support himself independently and relies on Carolyn to supplement his income and manage his financial affairs in order to provide his necessities. Further, Jeff expresses a desire to attend college but testified that he could not do so due to his inability to pay such expenses. The chancellor's decision, based on the evidence in the record, cannot be said to constitute manifest error. We therefore sustain his finding on this issue.

III. WHETHER THE CHANCELLOR ERRED IN REFUSING TO APPLY THE EQUITABLE DEFENSE OF LACHES AGAINST CAROLYN ANDREWS WILLIAMS TO THE ISSUE OF THE TUITION FOR JEFF'S ATTENDANCE AT CRUGAR-TCHULA ACADEMY.
¶ 15. As his third assignment of error, Harry argues that the doctrine of laches should be applied to Carolyn's claim for Jeff's tuition at Crugar-Tchula Academy because she delayed over a decade in raising the claim. We need not address the merits of Harry's argument in this regard as he failed to comply with the Mississippi Rules of Civil Procedure which unequivocally required him to plead this affirmative defense in his answer to Carolyn's petition: "a party shall set forth affirmatively ... laches ... and any other matter constituting an avoidance or affirmative defense." M.R.C.P. 8(c) (1998). An affirmative defense not raised in a defendant's answer or tried by consent of the parties is deemed to be waived. Goode v. Village of Woodgreen Homeowners Ass'n 662 So.2d 1064, 1076 (Miss.1995); R & S Development, Inc. v. Wilson, 534 So.2d 1008, 1012 (Miss.1988).
¶ 16. The chancellor did not abuse his discretion or commit manifest error in his award of these tuition costs to Carolyn. The testimony on this issue, admittedly, is unclear. However, divorce proceedings are some of the most difficult decisions that chancellors and this Court must face and resolve. More often than not, the record in a divorce proceeding lacks direct evidence and documentation of various expenses. As a general rule, we leave these issues to the sound discretion of our chancellors. The testimony established that Jeff did attend Crugar-Tchula for a period of time. The record, we believe, contains sufficient, credible evidence relating to the period of time that Jeff was enrolled at the academy. During cross-examination, Harry testified that Jeff attended *1180 Crugar-Tchula Academy for "half a year" during the second grade school year. Harry also admitted that Jeff was enrolled for a "half a year" for third grade at the academy. However, he stated that he was not perfectly clear about that year. Finally, Harry testified that his son continued to attend the academy during his fourth grade year. Thus, by his own testimony, Harry admitted that his son was enrolled at the academy for a total of approximately two years between his second, third, and fourth grade school terms.
¶ 17. In his detailed judgment and order, the trial court found that Harry was indebted to Carolyn for the time that their child was enrolled at the academy. The chancellor noted that the evidence established that Jeff attended the academy for six months during the 1984-85 school year and throughout the 1985-86 and 1986-87 year. Harry admitted that he did not pay anything toward his son's tuition since the divorce. As a result, the chancellor awarded Carolyn the sum of $3,000 based upon a total of twenty-four months enrollment at the academy at $125 per month. Although the testimony of Carolyn and Jeff may have been somewhat confusing, the Mississippi Supreme Court has repeatedly held that "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." Polk v. Polk, 559 So.2d 1048, 1049 (Miss.1990). Harry admitted that his son attended Crugar-Tchula Academy for a total of approximately two years. Based upon this evidence and the testimony of the parties, particularly that of Harry, we find that there was sufficient evidence supporting the chancellor's decision in this regard. Accordingly, we affirm the award.

IV. WHETHER THE CHANCELLOR ERRED IN REFUSING TO ALLOW LETTERS FROM THE DEPARTMENT OF HUMAN SERVICES INTO EVIDENCE UNDER MISSISSIPPI RULE OF EVIDENCE 803(24).
¶ 18. Harry next argues that the chancellor erred in not allowing copies of letters received by him from the Department of Human Resources into evidence under Mississippi Rule of Evidence 803(24). The three letters in issue were all from the Washington County Department of Human Services: one was a request to Harry to provide receipts of child support payments, one was a statement for past due child support in the amount of $6,600, and one was a letter to Harry indicating that the Department's records reflected that he did not owe any back child support.
¶ 19. Harry attempted to obtain the child support records for Jeff and Stacy from the Department of Human Services for this case via a subpoena duces tecum; however, his subpoena was quashed.[4] Harry's counsel, Ms. Edwards, attempted to place the letters into evidence under the public records exception to the hearsay rule of the Mississippi Rule of Evidence. The chancellor held them to be hearsay and not within the exception. She then attempted to get them admitted under the "catchall" exception, Rule 803(24). Again, she was denied admission of the letters.
¶ 20. Harry's argument in this regard is spurious. As previously stated, in domestic matters the chancellor is vested with "the interpretation of evidence where it is capable of more than one reasonable interpretation...." Crow v. Crow, 622 So.2d 1226, 1229 (Miss.1993); Rainey v. Rainey, 205 So.2d 514, 515 (Miss.1967). It is of no import to the trial court that the Department of Human Services may have previously assessed the amount of child support arrearage in this case. DHS is but one more administrative body that in some instances has some statutory authority to pursue overdue child *1181 support payments. DHS's conclusions as to facts were not binding on the court. Accordingly, the letters from DHS had no probative value in the chancellor's determination of arrearage in this case. Thus, given our limited scope of review, we cannot say that the chancellor's disallowance of the letters into evidence was manifest error. Consequently, we overrule this assignment of error.

V. WHETHER THE CHANCELLOR ERRED IN AWARDING CAROLYN ANDREWS WILLIAMS ATTORNEY'S FEES.
¶ 21. Harry's fifth and final assignment of error alleges that the chancellor's award of attorney's fees for Carolyn were improper. The issue of determining attorney's fees in domestic cases is largely left to the discretion of the chancellor. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982); Walters v. Walters, 383 So.2d 827, 828 (Miss. 1980). The appropriate fees depend on a variety of factors including a consideration of the ability of a party to pay the fee, the skill and reputation of the attorney employed, the complexity of the case, and the degree of responsibility involved in management of the case. McKee, 418 So.2d at 767. Additionally, the amount of time and labor required, the customary charge for similar services in the community, and the preclusion of other employment by the attorney due to the acceptance of the case are relevant factors to consider. Id.
¶ 22. In this case, Carolyn testified that she had paid $450 in attorney's fees prior to the day of the trial. Her attorney testified that he had expended ten hours on this case at $125 per hour for a total of $1,250. Based on this evidence, the chancellor awarded $1,250 in attorney's fees.
¶ 23. Our reading of the record leads us to conclude that this award was appropriate and reasonably consistent with customary fees in this area of legal practice. The chancellor properly sought evidence regarding fees as required by McKee and based his award upon this evidence. Accordingly, finding no abuse of discretion, we must sustain the fee award of $1,250.
¶ 24. THE JUDGMENT OF THE HOLMES COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. THE COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.
McMILLIN and THOMAS, P.JJ., DIAZ, HERRING, HINKEBEIN, KING, and SOUTHWICK, JJ., concur.
BRIDGES, C.J., concurs in part, dissents in part with separate written opinion joined by COLEMAN, J.
BRIDGES, C.J., concurring in part, dissenting in part:
¶ 25. While I concur with the majority's opinion regarding issues I  IV, I respectfully dissent from the majority's decision regarding issue V. The law regarding the award of attorney's fees is clear in Mississippi. Our supreme court has held that a party seeking attorney's fees must clearly demonstrate the inability to pay the fees, and in the absence thereof, the chancellor may not award such fees. Rogers v. Rogers, 662 So.2d 1111, 1116 (Miss.1995) (emphasis added); Martin v. Martin, 566 So.2d 704, 707 (Miss.1990). If the record fails to reflect the inability to pay, or if the party seeking the fees does not testify that she is unable to pay the fees, then the chancellor must find that the party was unable to pay her attorney's fees, a factor necessary in making such an award. Johnson v. Johnson, 650 So.2d 1281, 1288 (Miss.1994); McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). As the majority correctly stated, attorney's fees are a matter entrusted to the sound discretion of the chancellor. Brooks v. Brooks, 652 So.2d 1113, 1120 (Miss. 1995) (citation omitted). However, sufficient evidence must exist to accurately assess a proper fee. McKee v. McKee, 418 So.2d 764, 767 (Miss.1982) (emphasis added).
¶ 26. Because Carolyn did not testify to her need for attorney's fees and that she was unable to pay her attorney, and since the chancellor failed to make specific findings on the record, the chancellor had no basis or justification in awarding her attorney's fees. Carolyn's attorney on direct examination asked her the following questions:

*1182 Q: Now, I'm going to ask you another question. Do you recall what legal fees and costs you have expended in the pursuit of this action?
A: Do I know the exact amount?
Q: Yeah. Do you know what you paid my office for legal fees and for costs of Court?
A: Okay. I'm not sure, but $450.00 I know I've paid.
Q: All right. Do you consider that amount to be a reasonable amount at this point?
A: Yes.
This was the only testimony Carolyn provided in regards to her attorney's fees. Never did she testify that she was unable to pay her attorney or that she wanted the judge to award her attorney's fees.
¶ 27. The majority's opinion lists the factors required by McKee in assessing attorney's fee and states that "the chancellor properly sought evidence regarding fees as required by McKee and based his award upon this evidence." However, I find nothing in the record to indicate that the chancellor followed the law or applied the McKee factors in the case at bar. The chancellors' findings stated:
Mrs. Williams sought to recover a reasonable attorney's fee. She appears to have no ability to pay such a fee without placing herself and the children in a financial strain. I find a reasonable fee to be $1,250.00. This amount shall be added to the judgment rendered and further, under penalty of contempt, shall be paid to Mrs. Williams within 120 days of the entry of judgment.
However, nothing in Carolyn's testimony ever indicated that she was seeking attorney's fees or that she was unable to pay them.
¶ 28. In Rogers, 662 So.2d at 1116, the supreme court pronounced that "a party seeking attorney's fees must clearly demonstrate the inability to pay the fees", and not that a party seeking attorney's fees should be sure to get into the record evidence of their unsatisfactory or unstable general financial situation for this Court to later magically convert into a comment or finding on the specific inability to pay attorney's fees. The burden should be on the party seeking the award of attorney's fees to clearly demonstrate the inability to pay, not on this Court, on appeal, to make findings that the inability to pay had been shown. By proceeding this way, perhaps this Court can avoid engaging in less than sound jurisprudence. The purpose of this dissent is to encourage the majority to set forth a clear, workable precedent that rests neatly within the confines of the "roadmap" of law that the supreme court has laid out for us. In light of the above facts and law, I would find that the chancellor's findings were not supported by credible evidence, and that he erred in awarding attorney's fees to Carolyn. Therefore, I would reverse and render as to any such award.
COLEMAN, J., joins this separate written opinion.
NOTES
[1] With regard to the post-secondary education of the children, Carolyn provided that if the children should receive grant or scholarship assistance, Harry would only be required to pay all reasonable costs not covered by the grant or scholarship.
[2] We note that Carolyn's testimony reflects that while she failed to keep the calendar recordings of Harry's payments, she did manage to keep two personal checks Harry issued to her on insufficient funds which Harry ultimately paid in full. It appears clear that Carolyn would be better served if she would prioritize her record keeping and be more careful about what she endeavors to keep and what she manages to lose.
[3] Harry admitted that some of his child support payments on his personal checking account bounced during this year; however, his then-wife was at fault. During this time, Harry was working off-shore and as soon as he returned, he satisfied his obligations with money orders. Unfortunately for Harry, the money order receipts for these payments and other payments he allegedly made by money order have been lost.
[4] The record shows that Harry's attorney issued a subpoena for these and other related records from the Department of Human Services; however, the Attorney General's Office filed a motion seeking to quash the subpoena, arguing that the records were confidential under Miss.Code Ann. §§ 43-1-19 and 43-19-45. Apparently, although there is no such indication in the record, the subpoena was quashed based on the Attorney General's motion. The actual quashing of the subpoena was not objected to on the record at trial and we decline to address the merits of the chancellor's action in that regard here.