**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 1998-CA-01906-SCT**

*HUBERT HOUSTON MAGEE*

*v.*

*LYNETTE D. MAGEE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/05/1998 |
| TRIAL JUDGE: | HON. DENNIS M. BAKER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERT H. BROOME |
| ATTORNEYS FOR APPELLEE: | JAMES McCLURE |
| | CHARLES MILTON DEATON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 1/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/17/2000 |

**BEFORE PITTMAN, P.J., BANKS AND COBB, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. Hubert Houston Magee appeals from the judgment of the Chancery Court of Panola County, Mississippi, Second Judicial District, which denied modification of the child support in the Decree of Divorce which was entered August 14, 1996. On January 27, 1998, Hubert Magee filed a petition seeking a reduction in child support while Lynette Magee cross-petitioned for contempt. The cause was heard on November 10, 1998. The Chancellor denied a reduction in child support, refused to hold Hubert Magee in contempt but awarded a judgment for $8,198.20 in arrears to Lynette Magee. The order was entered on December 5, 1998, and Hubert Magee appeals from this judgment.

**STATEMENT OF THE FACTS**

¶2. Hubert Magee (Hubert) and Lynette Magee (Lynette) obtained a divorce decree by agreed order on August 14, 1996. At that time, Hubert assured the court that he could afford $1,000 per month child support as agreed by the parties. Hubert was then employed by Jet Medical and reported a variable monthly salary of $2,000-$2,500. He owned 102 acres and two other properties debt free from which he received $10,000 in yearly rental income. He also owned free of debt a 1994 GMC truck.

¶3. From the date of the decree to the filing for modification of child support, Hubert experienced some unfortunate business occurrences. Jet Medical suffered economic difficulty and failed to pay Hubert any

salary for three to four months from November 1996 to February 1997. Although he remained with the company, Hubert took out a loan for $40,000 on December 5, 1996. The loan was secured by his 102 acre farm and allegedly used to pay living expenses and child support. Hubert also testified that he had a gambling problem during this time, and testimony also showed that Hubert had received several thousand dollars in "markers" at Tunica casinos during December 1996. Hubert, however, claimed that he always repaid the full amount within a few days.

¶4. Due to an expansion in ownership, Jet Medical became Jet Medical Respiratory in February 1997. Hubert's salary increased to $4,000 per month. Resulting financial problems, however, caused the company to collapse in November 1997, still owing Hubert $2,500 in back pay. On June 20, 1997, Hubert married his current wife, and they subsequently purchased a home in Cordova located in Shelby County, Tennessee, for $110,000.

¶5. After Jet Medical Respiratory declared bankruptcy, Hubert began work for Genesis Enterprises in November 1997 and continued until the company collapsed in February 1998. Hubert's salary was set at $4,000 per month, but he was soon told that Genesis would be unable to pay him until January. The President of Genesis gave Hubert a $12,000 promissory note upon which Genesis made payments of $500 a month. Realizing he could not meet his obligations but desiring to stay with Genesis, Hubert took out another loan on his 102 acres in the amount of $25,000 on January 20, 1998. On January 27, 1998, Hubert filed the petition for modification of the divorce decree.

¶6. Subsequent to the filing for modification, Hubert worked for a landscaping company, a Goodyear store, and in June 1998 gained employment as a commercial salesman for Dunlap and Kyle in Memphis, Tennessee. Hubert's current salary is $2,200 per month. He still receives $10,000 a year in rental income. Hubert also still owns his 1994 vehicle free of debt. Hubert and his wife no longer live in the home in Cordova but rather, live in a one bedroom apartment for $600 per month. Hubert receives $1,200 per month in rent on the house and makes a mortgage payment of $950 per month on the house for which he still owes $104,000. Hubert also owed the following amounts at the time of the modification hearing: $65,000 for loans on his 102 acres, $14,500 for a new vehicle, $950 to Circuit City for a washer and a dryer, $795 to Amoco for fuel and oil and $185 to J. C. Penney's for clothes. From August 14, 1996, to January 27, 1998, Hubert accumulated debt totaling $191,430 of which $185,430 was outstanding at the time Hubert filed for modification.

¶7. Hubert claims a monthly net pay of $3,468.96, including salary and rental income. After deductions, including child support, from his salary, Hubert shows a monthly disposable income of $841.26. Hubert seeks a downward modification of his $1,000 per month child support obligation.

## STATEMENT OF THE ISSUES

**I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN FAILING TO GRANT DOWNWARD MODIFICATION OF HUBERT MAGEE'S CHILD SUPPORT OBLIGATION.**

**II. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR BY NOTING THAT HUBERT MAGEE'S CURRENT WIFE DOES NOT PROVIDE REGULAR INCOME TO THE RELATIONSHIP.**

**DISCUSSION**

¶8. The Court affords broad discretion to the chancellor in child support cases, reversing only when he is manifestly wrong or has abused his discretion. *Bruce v. Bruce*, 687 So.2d 1199, 1202 (Miss.1996); *Hammett v. Woods*, 602 So.2d 825, 828 (Miss.1992). Where supported by substantial credible evidence, the chancellor's findings of fact will be upheld on appeal, so long as they are not manifestly wrong. *Anderson v. Anderson*, 692 So.2d 65, 72 (Miss.1997); *see also* *Devore v. Devore*, 725 So.2d 193 (Miss.1998). Such findings are given particular deference concerning divorce and child support. *Turpin v. Turpin*, 699 So.2d 560 (Miss.1997); *Tilley v. Tilley*, 610 So.2d 348, 351 (Miss.1992); *Nichols v. Tedder*, 547 So.2d 766, 781 (Miss.1989).

### I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN FAILING TO GRANT DOWNWARD MODIFICATION OF HUBERT MAGEE'S CHILD SUPPORT OBLIGATION.

¶9. Hubert Magee seeks downward modification of his $1,000 a month child support obligation because he is allegedly unable to meet his living expenses under such a heavy burden. In seeking a modification of decree to reduce child support payments, Hubert must prove a material change in circumstances since the entry of the decree, that such change was unforeseeable at the time of the decree and that the change was not caused by willful or bad faith actions on Hubert's part. *Varner v. Varner*, 666 So.2d 493, 497 (Miss. 1995).

¶10. While expenses incurred as a means to meet child support obligations may be a consideration, generally, accumulation of personal expense is not used as a factor to modify child support. *Varner*, 666 So.2d at 495-98. Indeed, "debt owed in an attempt to meet . . . support payments . . . in and of itself does not warrant a reduction in child support." *Lack v. Nash*, No. 98-CA-00073-COA, 1999 WL 432582, 4 (Miss. Ct. App., Jun. 29, 1999).

¶11. Hubert primarily accumulated debt attributable to buying a new house and a new car and taking out loans on his land. While he alleges that the loans were required to meet his living expenses and meet his child support obligations, there is evidence to suggest that a significant amount of the loan for $40,000 was spent on gambling. Hubert admitted that he had a gambling problem during late 1996 and early 1997, the loan being made on December 5, 1996. Although he denied any loss due to large gambling debts, Hubert failed to explain adequately where the money from the loans had been spent. A general accounting will not suffice; earnings and expenses must be proved with particularity. *Poole v. Poole*, 701 So.2d 813, 818 (Miss. 1997); *Mullen v. Mullen* 246 So.2d 923, 924 (Miss. 1971).

¶12. Such ambiguity does not help Hubert in his cause. Furthermore, testimony from Hubert himself concerning his 1996 tax return suggests that he actually had no living expenses in late 1996 and early 1997 as he was being provided for by his boss/girlfriend with whom he was living.

¶13. Regarding the loan of $25,000 made on the land in late January 1998, there are more questions as to where the money went. Hubert filed for modification on January 27, 1998, and in May 1998 Hubert wrote Lynette a note claiming he could not make the full payment for that month because he was short on money. Again, there is testimony that Hubert frequented a casino in May of 1998. If it is not conclusive that Hubert wasted his money on gambling, the lack of specificity in his accounting for the money is at least evidence of bad financial planning above and beyond his poor business decisions and mishaps. Such decisions were not

only foreseeable but made of his own free will.

¶14. It must not be forgotten that Hubert readily agreed to the divorce decree. He assured the chancellor that he could afford $1,000 per month in child support. It must be assumed that Hubert understood and approved of the agreement. *Morris v. Morris*, 541 So.2d 1040, 1043 (Miss. 1989). Now, approximately one year and a five months after the divorce, Hubert seeks modification. The short lapse of time between the divorce and the petition for modification is itself a weighty consideration which does not bode well for Hubert. *Morris*, 541 So.2d at 1043. Such a short passing should be critically scrutinized by the Court.

¶15. Hubert claims that the imposition of the current child support amount violates 15 U.S.C. § 1673(b)(2) which states that:

> The maximum part of the aggregate disposable earnings of an individual for any work week which is subject to garnishment to enforce any order for the support of any person shall not exceed:

> (A) Where such individual is supporting his spouse or dependent child (other than a spouse or child with respect to whose support such order is used), 50 per centum of such individual's disposable earnings for that week;

Hubert claims in his brief that, after taxes and mandatory deductions, his disposable income per pay period is $884.48 from which $463.85 is withheld for child support, in excess of the 50% allowed by 15 U.S.C. § 1673(b)(2)(A). The limit, however, is extended to 55% where such garnishment is employed to enforce an order issued three months prior to the first work-week in which wages are garnished. 15 U.S.C. § 1673(b)(2)(B). The amount withheld is less than 55% of Hubert's disposable income, requiring no decrease.

¶16. Even if the amount were to violate the statutory maximum this would not require a reduction in the child-support obligation. Rather, the amount garnished would be reduced to comply with the statutory maximum. Hubert would still be obligated for $1,000 per month in child support.

¶17. The evidence reveals that Hubert's current income is almost identical to his income at the time he agreed to the divorce decree. In a very short period of time, Hubert has accumulated considerable personal debt through his willful acts. Such acts are foreseeable. Hubert has explained his earnings and expenses in only general terms, failing to make a detailed accounting. Hubert voluntarily agreed to the amount of child support and within a short time sought modification. Given this Court's limited standard of review, prior case law and the fact that Hubert utterly failed to prove a material change in his circumstance, the chancellor did not abuse his discretion in denying a downward modification of Hubert's child-support obligation.

### II. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR BY NOTING THAT HUBERT MAGEE'S CURRENT WIFE DOES NOT PROVIDE REGULAR INCOME TO THE RELATIONSHIP.

¶18. Hubert claims that the chancellor inappropriately considered the fact that Hubert's current wife does not contribute any income to the relationship when he decided not to reduce Hubert's child-support obligation. It is true that the chancellor on three occasions commented that Hubert's wife was not contributing. This was done, however, in the context of suggesting that if she did contribute more then Hubert's debt load would not be so heavy. The chancellor's own words are revealing of his intended meaning: "But the problem I find is, that your wife ought go [sic] to be carrying her part of the load. If she was carrying her part of the load, then the load wouldn't be so heavy for you. And I don't see that you have

a right to simply push your son, in effect, aside."

¶19. While it is irrelevant when considering child support what the non-supporting spouse makes, the question is usually addressed in the context of awarding child support or increasing it. ***Tedford v. Dempsey***, 437 So.2d 410, 420-21 (Miss. 1983). Here the chancellor did not place any weight on the fact that Hubert's wife has no steady income. The chancellor did not penalize Hubert for his wife not working by not reducing Hubert's child support obligation. He merely empathized with Hubert's debt load and commented on how some of it might be alleviated. Hubert's assertion has no merit.

## CONCLUSION

¶20. Hubert's arguments supporting a downward modification of his $1,000 per month child support obligation are without merit, and the chancellor did not err in rejecting them. Accordingly, the judgment of the Panola County Chancery Court denying downward modification is affirmed.

¶21. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN, P.J., BANKS, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**