952 So.2d 1023 (2007)
Jon GRISSOM, Appellant
v.
Bobby GRISSOM, Appellee.
No. 2005-CA-01738-COA.
Court of Appeals of Mississippi.
March 20, 2007.
*1025 Renee M. Porter, attorney for appellant.
Thomas T. Buchanan, Laurel, attorney for appellee.
Before MYERS, P.J., IRVING and BARNES, JJ.
MYERS, P.J., for the Court.
¶ 1. This case comes on appeal from the order of the Jones County Chancery Court, Second Judicial District, granting Bobby Grissom's motion for a downward modification of his child support and medical expense obligations, and denying Jon Grissom's motions for modification of child custody, judgment for past-due child support and medical expenses, and contempt. After a thorough review of the record, we affirm the judgment of the chancery court.

STATEMENT OF THE FACTS
¶ 2. Bobby and Jon Grissom were married on July 16, 1983. The couple had two *1026 children born of the marriage, Lara Ann and Rebecca. Bobby and Jon divorced by final judgment of the Jones County Chancery Court, Second Judicial District, on May 14, 2001. At the time of the divorce, the parties agreed to all matters except child custody, child support, visitation, and attorneys' fees. The chancery court heard testimony on those matters, and applying the Albright factors, determined that an award of joint legal and physical custody was in the best interest of the children. Bobby, the children's father, was further ordered to pay $165 per month in child support, to maintain medical insurance on the children, and to pay seventy-five percent of any uncovered medical expenses.
¶ 3. On January 8, 2003, Jon filed a motion for contempt, alleging that Bobby owed her $600 in past-due child support and $1,777.09 in past-due medical expenses. To avoid litigation, Bobby tendered the amount requested to Jon's attorney, conditioned upon Bobby's approval of a detailed listing of the medical expenses allegedly owed. Upon receipt of the medical expense listing, Bobby discovered that the majority of the medical expenses claimed occurred prior to the divorce, and immediately moved to reinstate the divorce pleadings in the form of a complaint for relief from judgment.
¶ 4. On November 3, 2003, Bobby filed a motion for temporary relief from his child support and medical expense obligations, citing that he had been laid off from his job, through no fault of his own, as a material change in circumstances warranting relief. On November 25, 2003, Jon answered Bobby's complaint, and filed her counter-complaint seeking a modification of child custody and a judgment for contempt. In support of her claim, Jon alleged that Bobby was several months past-due on his child support payments and medical expense obligations, and argued that he should be found in contempt. Jon further argued that the parties' alleged inability to communicate with one another, coupled with an alleged onset of anxiety in the children attributed to switching back and forth between homes every week, created a material change in circumstances adverse to the children, and supported modification of child custody to provide Jon with primary physical custody. In December 2003, Jon sought a continuance through her counsel, and in exchange for the continuance she agreed that any relief granted by the chancellor would be retroactive to December 2003.
¶ 5. On October 5, 2004, Bobby answered Jon's motion for contempt, filed a cross-complaint for modification of child support, contempt, sanctions, and for the appointment of an independent medical examiner to determine the degree of anxiety the children were experiencing. A hearing was held on March 8, 2005, at the conclusion of which the chancellor addressed the issue of child custody from the bench. The chancellor concluded that no evidence had been presented as to a material change in circumstances adverse to the interest of the children, warranting a modification of child custody. However, the chancellor left the record open to allow the parties an opportunity to depose a psychologist, appointed by the court to evaluate the children's level of anxiety. In the four months following the hearing, Jon failed to take the psychologist's deposition. Subsequently, on July 5, 2005, the chancellor closed the record.
¶ 6. On August 18, 2005, the chancellor issued a written opinion, in which he found that each party owed the other mutually off-setting amounts, and denied either party a money judgment against the other. The chancellor further stated that sanctions could be properly imposed against Jon and her attorney, for their repeated *1027 failure to follow proper court procedures; however, in the interest of putting the litigation to an end, the chancellor refrained from imposing such sanctions. Additionally, the chancellor found Bobby's termination from his job to be a material change in circumstances, placing the parties on equal economic footing, and justifying a modification of his child support obligations, so that child support would no longer be required. Further, the chancellor ordered that all future medical insurance and additional medical expenses be divided equally between the parties. Finally, neither Bobby nor Jon was found in contempt. Aggrieved by the judgment of the chancery court, Jon appeals, raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN FAILING TO MODIFY THE CUSTODY ORDER?
II. WHETHER THE CHANCELLOR ERRED IN MODIFYING BOBBY'S CHILD SUPPORT AND MEDICAL EXPENSE OBLIGATIONS?
III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD PAST-DUE CHILD SUPPORT AND MEDICAL EXPENSES?
IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO FIND BOBBY IN CONTEMPT?

STANDARD OF REVIEW
¶ 7. The scope of review in domestic relations matters is strictly limited. Bryant v. Bryant, 924 So.2d 627, 630(¶ 5) (Miss.Ct.App.2006). "This Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." Id. (quoting Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998)). Particularly in the areas of divorce, alimony and child support, this Court is required to uphold the findings of fact made by a chancellor that are supported by substantial evidence and are neither arbitrary nor capricious. Id.

DISCUSSION
I. WHETHER THE CHANCELLOR ERRED IN FAILING TO MODIFY THE CUSTODY ORDER?
¶ 8. In order to modify child custody orders, the moving party must prove that a material change in circumstances has occurred since the original decree, adverse to the best interest of the child. Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss.2003). Jon, in her cross-complaint, argued that the parties could not now, nor have they ever been able to, communicate with one another or work together regarding the joint child custody arrangement. Before rendering his opinion in the case sub-judice, the chancellor heard the testimony of the parties and reviewed the transcript and pleadings from the original divorce, which included an analysis of the applicable factors under Albright v. Albright, 437 So.2d 1003, 1003 (Miss.1983). The chancellor then rendered his opinion recognizing the strained relationship between the parties. However, the chancellor noted that by Jon's own admission, this strained condition existed at the time of the original judgment of divorce. Accordingly, the chancellor determined that Jon had failed to present any evidence showing a material change adverse to the children since the original judgment, and that it remained in the best interest of the children to continue under the original joint custody order.
¶ 9. On appeal, Jon argues that she and Bobby never agreed to an award of joint custody, and under Morris v. Morris, 758 So.2d 1020, 1021(¶ 12) (Miss.1999) (overruled by Crider v. Crider, 904 So.2d 142 *1028 (Miss.2005)), the award of joint custody was not proper without the agreement of the parties. However, Jon concedes in her own brief, that Morris has been overturned. Since Albright, our supreme court has been unwavering in its conviction that the polestar consideration when determining child custody is the best interest of the child, and where the chancellor determines that the best interests of the child are served by joint custody, such may be ordered with or without the agreement of the parties. Crider, 904 So.2d at 144(¶ 6), 148(¶ 15). Further, "when parties consent in writing to the court's determination of custody, they are consenting and agreeing to that determination." Id. at 148(¶ 15). Accordingly, Jon's argument that the agreement of the parties was required in order for joint custody to be granted is without merit. The chancellor applied the appropriate legal standard, and his decision not to modify custody was neither arbitrary, capricious, nor an abuse of discretion.
II. WHETHER THE CHANCELLOR ERRED IN MODIFYING BOBBY'S CHILD SUPPORT AND MEDICAL EXPENSE OBLIGATIONS?
¶ 10. Jon argues that the lower court erred in modifying Bobby's child support and medical expense obligations downwardly because she alleges that Bobby acted in bad faith, by failing to pursue other employment following his termination from his job, and that he thereafter unilaterally reduced his child support and medical expense obligations. Further, Jon argues that the chancellor erred in retroactively reducing Bobby's child support obligations and in reducing his obligation to maintain medical insurance when such relief was not requested. Bobby argues that he promptly notified Jon of his termination, advised her to seek temporary medical insurance for the children, and filed for temporary relief from his support obligations in November 2003 following his September 2003 termination. Bobby further argues that, due to the competitive job market, he decided to open his own construction company, rather than pursue other employment, in a good faith attempt to earn a living for himself and his family. Additionally, Bobby asserts that in exchange for a continuance sought by Jon, the parties agreed that any relief granted would be retroactive to the December 2003 order, that the agreement is evidenced by the December 2003 order prepared by Jon's attorney, and that having benefitted from the agreement, Jon is estopped from arguing now that the relief could not be granted retroactively.
A. Bad Faith
¶ 11. In seeking a downward modification of child support payments, Bobby must prove a material change in circumstances since the entry of the original judgment, that such change was unforeseeable at the time of the original judgment, and that the change was not caused by his willful conduct or bad faith actions. Magee v. Magee, 755 So.2d 1057, 1059-60(¶ 9) (Miss.2000) (citing Varner v. Varner, 666 So.2d 493, 497 (Miss.1995)). One factor that may be considered in determining whether a material change in circumstances warranting child support modification has taken place is the relative financial condition and earning capacities of the parties. Bailey v. Bailey, 724 So.2d 335, 337(¶ 7) (Miss.1998). However, "[t]he law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support." Id. at 337(¶ 8) (quoting Willis v. Willis, 109 Or.App. 584, 820 P.2d 858 (1991)). "[B]ad faith," in this context, "has *1029 generally been defined as an obligor's action to reduce income or assets for the purpose of `jeopardizing the interests of his children.'" Id. (citing Nelson, 225 Or. at 261, 357 P.2d 536; Lee v. Lee, 459 N.W.2d 365, 369 (1990)).
¶ 12. The record in this case is clear. Bobby did not voluntarily reduce his income. He was fired. The chancellor found that Bobby's termination was through no fault of his own and that his desire to start his own business was a good faith effort to earn an income by which he could support himself and his children. It is not our duty as an appellate court to substitute our judgment for the chancellor's; rather our duty is merely to determine if the chancellor's ruling is supported by evidence. Brewer v. Brewer, 919 So.2d 135, 141(¶ 23) (Miss.Ct.App.2005). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." Bower v. Bower, 758 So.2d 405, 412(¶ 33) (Miss. 2000). Here, the chancellor's determination was supported by the testimony offered at the hearing, and we agree that Bobby did not act in bad faith.
B. Unilateral Reduction in Child Support
¶ 13. Jon argues that Bobby cannot seek a downward modification of his child support and medical expense obligations because he was in arrearage thereon when he sought relief. She argues that under Brennan v. Brennan, 605 So.2d 749 (Miss.1992), Bobby may not petition for modification of the original judgment without showing either that he has performed his obligations under the order or that his performance has been rendered wholly impossible by circumstances not of his making. As discussed supra, the chancellor found that, although Bobby was in arrearage on his support obligations, his termination from his employment rendered his performance under the original judgment wholly impossible. Further, we note that Bobby sought judicial relief from his support obligations soon after being terminated from his employment and becoming delinquent on his support obligations. The chancellor heard testimony and evaluated the financial positions of the parties. He then determined that Bobby's termination constituted a material change in circumstances justifying a downward modification. The chancellor found that the parties were now on equal economic footing and order a modification of child support so that neither party would owe child support to the other. He further ordered the parties to share equally the cost of medical insurance and uncovered medical expenses. The chancellor's ruling is supported by substantial evidence found in the record, and this argument is without merit.
C. Retroactive Reduction in Child Support
¶ 14. Jon argues that the chancellor's order modifying Bobby's child support obligations downwardly constituted an unlawful retroactive modification. Bobby argues that Jon is judicially estopped from arguing that the order was retroactive, because she agreed that any relief granted would be retroactive to December 2003. He asserts that this agreement is evidenced by the December 2003 order prepared by Jon's attorney. However, Bobby admits that at the time of the hearing he was $1,815 in arrearage on his child support obligations.
¶ 15. It is well-settled, that child support is for the benefit of the minor, and the custodial parent is only a conduit for the support. Durr v. Durr, *1030 912 So.2d 1033, 1038(¶ 14) (Miss.Ct.App. 2005). Therefore, "no action or inaction on the part of the custodial parent can relieve the defaulting parent of that parent's obligation to pay support." Id. "[C]hild support payments vest in the child as they accrue, [and] once they have become vested, just as they cannot be contracted away by the parents, they cannot be modified or forgiven by the courts." Houck v. Ousterhout, 861 So.2d 1000, 1002(¶ 9) (Miss. 2003). "Each payment that becomes due and remains unpaid `becomes a judgment' against the supporting parent.'" Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992). "The only defense thereto is payment." Id. Therefore, a retroactive reduction in child support would be in error.
¶ 16. However, upon closer review of the chancellor's order modifying Bobby's child support obligations, we find that a retroactive reduction did not occur here. Rather, the chancellor reviewed the financial records presented by the parties and determined that they owed each other offsetting sums. Bobby owed past-due child support to Jon, and Jon owed Bobby an equal amount for medical expenses paid that had accrued prior to the entry of the divorce agreement and for which Jon was not entitled to reimbursement. Rather than each party pay a money judgment to the other in equal amounts, the chancellor, in effect, declared a nullity. We find the chancellor's actions to be a proper exercise of judicial economy and find no error therewith.
D. Reduction of Bobby's Duty to Maintain Health Insurance
¶ 17. Lastly, on the issue of modification of child support and medical expenses, Jon argues that Bobby was not entitled to a reduction of his obligation to maintain health insurance because he never requested such relief. This allegation is patently false. Our review of the record reveals that such relief was expressly requested by Bobby in paragraph six of his October 15, 2004 cross-complaint for modification and contempt. The chancellor was well within his discretion to order such a modification, and this argument is without merit.
III. WHETHER THE CHANCELLOR ERRED IN FAILING TO AWARD A MONEY JUDGMENT AGAINST BOBBY FOR PAST-DUE CHILD SUPPORT AND MEDICAL EXPENSES?
¶ 18. Having already determined that the chancellor's decision that neither party owed a money judgment to the other because the parties owed offsetting amounts to one another was supported by substantial evidence, we decline to address this issue further.
IV. WHETHER THE CHANCELLOR ERRED IN FAILING TO FIND BOBBY IN CONTEMPT?
¶ 19. Whether a party is in contempt of court is left to the chancellor's substantial discretion. Shelton v. Shelton, 653 So.2d 283, 286-287 (Miss.1995). "When a party is unable to pay court ordered support, the proper action for him to take is to promptly file for a modification of support." Id. (citing Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990)). "When this course of action is followed, a finding of contempt is not proper." Id. (citing Cumberland, 564 So.2d at 847; Thurman v. Thurman, 559 So.2d 1014, 1016-17 (Miss.1990)). Here, the record clearly indicates that Bobby filed for temporary relief from the original divorce judgment less than three months after being terminated from his job. Further, Bobby filed a complaint for modification of his child support payments and medical *1031 expense obligations approximately one year after losing his job. The order of temporary relief had been in effect in the interim. We, therefore, hold, that Bobby followed the proper course of action in seeking a modification of his child support and medical expense obligations, and that a finding of contempt was not proper in this case.

CONCLUSION
¶ 20. Finding that the chancery court neither abused its discretion nor committed manifest error, we affirm the downward modification of child support and medical expense obligations, as well as the denial of a money judgment for or contempt order against either party.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.