# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01357-COA

**FLOYD WILLIAM TOLLIVER III**                                          **APPELLANT**

**v.**

**AMANDA PAIGE TOLLIVER**                                               **APPELLEE**

DATE OF JUDGMENT:               11/17/2020
TRIAL JUDGE:                    HON. WATOSA MARSHALL SANDERS
COURT FROM WHICH APPEALED:      BOLIVAR COUNTY CHANCERY COURT,
                                SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:         JASON EDWARD CAMPBELL
ATTORNEY FOR APPELLEE:          SHARON PATTERSON THIBODEAUX
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED - 02/22/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.

### SMITH, J., FOR THE COURT:

¶1.     Floyd William Tolliver III appeals from the Bolivar County Chancery Court's judgment dismissing his request for a downward modification of his alimony and child support obligations. On appeal, Floyd argues that the chancery court erred as a matter of law (1) by determining that Floyd's employment was terminated through his own fault based on his willful conduct and (2) by placing the burden on Floyd to disprove the allegations in his letter of termination. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Floyd Tolliver and Amanda Tolliver were granted a divorce in 2018. At the time of the divorce, the chancery court ordered Floyd to pay Amanda $900 in monthly alimony;

$1,120 in monthly child support; and $630 each month for private-school tuition. In April 2020, Floyd filed his first petition for a modification of his alimony and child support obligations. The chancery court granted Floyd's petition and entered an order on May 26, 2020, decreasing his child support obligation to $1,000 a month.

¶3. At the time, Floyd was employed full-time as a tooling-room manager at Ice Industries (Ice), part-time as a property manager for Innotion Enterprises (Innotion), and part-time as a private contractor for Insurance Risk Services (Insurance Risk). After the May 2020 modification order, Floyd partnered with a friend and opened a machine shop called HT Machines, which Floyd claimed was intended to be a small part-time business.

¶4. In late July 2020, Floyd contracted the COVID-19 virus and reported positive COVID-19 test results to Ice. He was ordered to isolate from July 20, 2020, through August 3, 2020, and received sick-leave pay from Ice during this mandatory fourteen-day quarantine. Floyd alleged he was still experiencing more than two COVID-19 symptoms after August 3, 2020, and therefore did not return to work when his mandatory quarantine expired on August 4, 2020. Floyd then received a letter from Ice on August 10, 2020, informing Floyd that his employment with Ice was "terminated as of August 7, 2020, for failure to report [his] absences beginning on August 4, 2020." The letter also stated that "during the time [he was] on paid sick leave from July 2020–August 3, 2020, [he was] engaging in outside employment, which [was] a violation of the Ice Industries Family and Medical Leave policy."

¶5. On August 12, 2020, Floyd filed his second petition to modify his alimony and child support obligations. He requested a downward modification, alleging that an unforeseeable

2

material change in circumstances had occurred because his job had been terminated, and he was unemployed. Floyd claimed that the material change (a reduction of income) occurred through no fault of his own because he was wrongfully terminated from his job at Ice. The chancery court held a hearing regarding Floyd's second petition on October 16, 2020. During the hearing, Amanda presented an ore tenus motion to dismiss and argued Floyd should not be entitled to a modification because he was responsible for his loss of income and had acted in bad faith. Specifically, Amanda claimed Floyd had been fired from his job at Ice through his own fault and voluntarily stopped working his other part-time jobs, which had brought him additional income.

¶6. On November 12, 2020, the chancery court issued a written opinion finding that Floyd had failed to provide evidence showing that he was not working at another job and had failed to meet his burden of proof. The court concluded that Floyd had been fired through his own fault and that he had acted in bad faith in worsening his financial position such that he could not meet his support obligations. Thus, the court granted Amanda's motion and dismissed Floyd's petition to modify his alimony and child support obligations. Aggrieved, Floyd appeals the chancery court's dismissal.

## STANDARD OF REVIEW

¶7. "This Court conducts a limited review of a chancery court's decision in a domestic-relations matter. . . ." *Martin v. Borries*, 282 So. 3d 472, 474 (¶7) (Miss. Ct. App. 2019). "Particularly in the areas of divorce, alimony and child support, this Court is required to uphold the findings of fact made by a chancellor that are supported by substantial evidence

and are neither arbitrary nor capricious." *Grissom v. Grissom*, 952 So. 2d 1023, 1027 (¶7) (Miss. Ct. App. 2007). "[U]nless its determination was an abuse of its discretion, manifestly wrong, clearly erroneous, or an erroneous legal standard was applied[,]" the "chancery court's findings will not be disturbed on appeal[.]" *Martin*, 282 So. 3d at 474 (¶7).

## DISCUSSION

¶8.     Floyd claims that the chancery court required him to prove that the allegations in his termination letter, including those regarding fault, were not true. In other words, Floyd alleges that to meet his burden, the chancery court improperly required him to prove that he did not work other jobs in violation of Ice's policy.

¶9.     Floyd misstates his burden of proof for a modification of his support obligations. The party seeking a modification of a support obligation "must prove a material change in circumstances since the entry of the decree, that such change was unforeseeable at the time of the decree and that the change was not caused by willful or bad faith actions on [the moving party's] part." *Magee v. Magee*, 755 So. 2d 1057, 1059-60 (¶9) (Miss. 2000). The chancery court's order at issue here stated that "the burden of proof is on Petitioner to prove no bad faith." But based on the context of the order, "bad faith" referred to the court's explanation that the material "change [in circumstances] must not be caused by the willful conduct or bad faith actions of the movant." Thus, Floyd's burden of proof was to show that his termination of employment and change in income were not caused by his own bad-faith actions.

¶10.    "Alimony and child support obligations are subject to modification only where there

4

has been a material change in the circumstances of one or more of the parties." *Yancey v. Yancey*, 752 So. 2d 1006, 1009 (¶9) (Miss. 1999). "One factor to consider in determining whether a material change has occurred 'is the relative financial condition and earning capacities of the parties.'" *Stephens v. Stephens*, 328 So. 3d 760, 767 (¶14) (Miss. Ct. App. 2021) (quoting *Martin*, 282 So. 3d at 474 (¶9)). The material change in circumstances must not have been "caused by willful or bad faith actions on [the petitioner's] part." *Magee*, 755 So. 2d at 1059-1060 (¶9).

¶11.　A determination of the petitioner's change in earning capacity "is dependent upon whether or not his departure from the employment he held during the marriage and after was in bad faith[.]" *Bailey v. Bailey*, 724 So. 2d 335, 338 (¶8) (Miss. 1998). "[T]he law is well-settled that, if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support." *Grissom*, 952 So. 2d at 1028 (¶11). However, "there is no strict rule of law that a modification shall be granted where the payor spouse's reduction in or loss of income is not the result of a bad faith action on his part." *Yancey*, 752 So. 2d at 1010 (¶10).[1] Our supreme court has explained that

> "Bad faith" is defined in Black's Law Dictionary as . . . generally implying or involving . . . a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake . . . but by some interested . . . motive. . . . [I]t contemplates a state of mind affirmatively

---

[1] "[S]imply because [the parent] acted without malice toward the interests of the child, he is not automatically entitled to a reduction in child support. The conduct truly at issue is the voluntariness of [the parent's] departure in light of the indirect effects of the good faith or bad faith surrounding it." *Pullis v. Linzey*, 753 So. 2d 480, 484 (¶9) (Miss. 1999).

operating with furtive design[.]

*Bailey*, 724 So. 2d at 338 (¶9) (quoting *Bad Faith*, Black's Law Dictionary 139 (6th ed.1990)).

¶12. In the proceedings at the trial court, "[t]he chancellor observed the witnesses firsthand, observed their demeanor, and heard the testimony." *Lahmann v. Hallmon*, 722 So. 2d 614, 622 (¶29) (Miss. 1998). Upon completion, the chancery court concluded that Floyd had not met his burden of proof to show no bad faith. The court found that Floyd acted in bad faith and was fired through his own fault because his termination was a direct result of Floyd's violation of Ice's family and medical leave policy. We find the record contains sufficient evidence to support the chancery court's determination.

## CONCLUSION

¶13. Finding that the chancery court did not commit manifest error, we affirm the dismissal of Floyd's petition to modify his alimony and child support obligations.

¶14. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**