IN THE SUPREME COURT OF MISSISSIPPI
NO. 93-CA-01110-SCT

*PATRICIA L. BRUCE (KRUPICA)*

*v.*

*JAMES B. BRUCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/6/93 |
| TRIAL JUDGE: | HON. ROBERT L. LANCASTER |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | BEN OWEN |
| ATTORNEY FOR APPELLEE: | GARY GOODWIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 9/5/96 |
| MOTION FOR REHEARING FILED: | 10/3/96 |
| MANDATE ISSUED: | 1/23/97 |

**BEFORE DAN LEE, C.J., MCRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Patricia L. Bruce appeals a decision of the Lowndes County Chancery Court declaring null and void part of a revised property settlement agreement incorporated into the divorce decree she entered into with her former husband, James B. Bruce. She asserts that James was in contempt of a previous court decree when he failed to pay twenty percent of a "bonus" received from his employer as part of his child support, that wording of an amended agreement should have been clarified and an omission from the previous agreement reinstated by the chancellor, and that she should have been awarded attorney fees. Finding no error, we affirm the chancellor's decision.

I.

¶2. Patricia and James Bruce were married on May 31, 1986, and lived together until March 15, 1990. They are the parents of two young children, Lacy Danielle and James Bruce, Jr. On February 1, 1991, the Bruces filed a joint bill for divorce based upon grounds of irreconcilable differences pursuant to Miss. Code Ann. § 93-5-2 (Supp. 1991).

¶3. Patricia was awarded primary custody of the couple's two children. The property settlement agreement attached to the joint bill of divorce provided, in relevant part, that James would pay $400.00 per month child support and provide medical insurance until the children reached the age of

majority. It was stipulated that as his income changed, child support payments would change proportionately.

¶4. On May 16, 1991, prior to entry of the final decree, the parties amended the property settlement agreement. At issue is the provision for monthly child support payments, which was modified to provide as follows:

> Further, that the parties hereto agree that the aforesaid $400.00 per month is equal to 20% of the net pay of the husband and that the husband hereby agrees to provide the wife a copy of his W-2 form as proof of his income. That both parties will then determine if the husband has paid 20% of his net pay as child support and if any additional amount would be due and owing from the previous year as child support then the amount due and owing must be paid in one lump sum to the wife no later than March 1 of each year.

¶5. The final decree was entered on June 20, 1991, with an attached withholding order for past due child support payments. The amended property settlement agreement was incorporated into the final decree.

¶6. On April 6, 1993, Patricia, who had since remarried, filed her "Petition To Cite Husband For Contempt, To Clarify Final Decree, Etc.," asserting that the amended property settlement agreement was "vague, defective, and somewhat ambiguous as it actually appears in the Final Decree." She alleged that James had violated paragraph (3) of the amended property settlement agreement by failing to pay all of the support due pursuant to the agreement in 1992.[1] Further, she sought to substitute the above-cited support provision with the requirement that monthly child support payments be increased to $800.00 per month to reflect twenty percent of James' adjusted gross income as reported for the previous year, with an additional amount payable at year end should the amount paid fall below twenty percent of James' AGI.

¶7. Patricia further alleged that she had paid medical bills totaling $238.29 on behalf of the children, which had been paid to James by his insurance carrier, but not reimbursed to her. She complained that the medical provision had been completely omitted in the amended version of the settlement. Therefore, she sought the reinstatement of the medical provision found in the original property settlement agreement as well as a new dental provision.

¶8. In response, James asserted that the extra money he made in 1992 was from overtime pay which was not regular or anticipated when determining his income for purposes of child support. He alleged an inability to pay the additional amount at the time the pleadings were filed. James further argued that there was no showing that the children needed additional support. Finally, in his counterclaim, he sought a modification of the divorce decree because instead of addressing the needs of the children, it predicated the amount of support solely on the payment of twenty percent of his "adjusted gross income." James did not allege a material change in circumstances for either himself or the children.

¶9. A hearing was held on May 26, 1993. In his written opinion, the chancellor found that there was no proof that the child support payments made in 1992 were insufficient to meet the children's needs. He further found that due to poor wording by the parties, the requirement of the amended agreement basing James' child support responsibilities on twenty percent of his "net pay" did not include any bonuses, stating:

The common definition of the noun, pay, is compensation owed for work or services, usually in the form of wages or salary. The common definition of the noun, bonus, is anything given or paid in addition to the customary or required amount. The parties expressly failed to use the statutory term, adjusted gross income, wherein the statutory definition includes as gross income all potential sources that may reasonably be expected to be available. The reference to income as reflected on the Defendant's W-2 form arguably converts the bonus to "pay", contrary to the common use of the words and the parties' failure to use the statutory words.

That part of the amended agreement which required James to provide Patricia with a copy of the previous year's W-2 form and "[t]hat both parties will then determine if the husband has paid 20% of his net pay as child support and if any amount would be due and owing from the previous year as child support then the amount due and owing must be paid in one lump sum to the wife no later than March 1 of each year," the chancellor found to be an escalation clause and void. Finally, he declared that absent a material change in circumstances, which neither party alleged, child support would remain at $400.00 per month. Patricia's Motion to Reconsider the August 26, 1993 Final Judgment was denied. Thereafter, she timely perfected this appeal.

## II.

¶10. The chancellor can modify the child support provisions of a divorce decree only when there has been a material or substantial change in circumstances of one of the parties. *Shipley v. Ferguson*, 638 So. 2d 1295, 1297 (Miss. 1994); *Morris v. Morris*, 541 So. 2d 1040, 1042-43 (Miss. 1989). The same holds true for divorces granted due to irreconcilable differences. *Thurman v. Thurman*, 559 So. 2d 1014, 1017 (Miss. 1990). The chancellor is afforded broad discretion in child support modification cases and we will reverse only when he is manifestly wrong in his finding of facts or has abused his discretion. *Hammett v. Woods,* 602 So. 2d 825, 828 (Miss. 1992).

¶11. Both parties testified regarding the support necessary for the children. Patricia admitted that she did not "think" she spends over $10,000.00 per year on their children, but she also said she did not record every time she spends money on them. James stated that he doubted she spends over $400.00 per month on the children and that she never gave him a detailed report. "In child support modification proceedings, the chancellor is given substantial discretion and charged to consider all relevant facts and equities in order to serve the best interests of the child." *Gambrell v. Gambrell*, 644 So. 2d 435, 441 (Miss. 1994). Based on the record before us, the chancellor properly found that there was no evidence that the current child support payments were inadequate and that there had been a change in circumstances warranting an increase in support payments.

¶12. The chancery court determined that the parties' choice of wording determined whether "bonus pay" would have come within the child support calculations. The chancellor stated that "bonus pay" would have come within the statutory definition of "adjusted gross income," but since the parties chose to base support on "net pay," only wages and salary were included. The clause granting additional support based on "bonus pay" appears to be intended to conform with the twenty percent figure suggested by the Child Support Guidelines in Miss. Code Ann. § 43-19-101 (Rev. 1993). These guidelines are not mandatory as to the specific need or support required; rather, the chancellor is to make the determination based on the facts he hears, the witnesses he views, and the circumstances of the parties, especially the child. *Gillespie v. Gillespie*, 594 So. 2d 620, 623 (Miss.

1992).

¶13. The chancellor determined that James and Patricia had, in essence, created an escalation clause which was void because it was "uncertain and indefinite with regard to escalation each year based on net pay." *Aldridge v. Parr*, 396 So. 2d 1027 (Miss. 1983); *Wing v. Wing*, 549 So. 2d 944 (Miss. 1989); *Brown v. Brown*, 566 So. 2d 718 (Miss. 1990); *Gillespie v. Gillespie*, 594 So. 2d 620 (Miss. 1992). To be enforceable, an escalation clause must be associated with (1) the inflation rate, (2) the non-custodial parent's increase or decrease in income, (3) the child's expenses, and (4) the custodial parent's separate income. *Tedford v. Dempsey*, 437 So. 2d 410, 419 (Miss. 1983). The Bruce agreement, however, does not take into account the custodial parent's separate income or the children's actual needs. We find no error, therefore, in the chancellor's order denying the extra child support Patricia sought.

III.

¶14. Patricia claims that the chancellor did not make any findings as to whether language in the final decree should be changed, as she argued, to prevent future litigation. First, she asked that the wording "other" be changed to "alternate" as it applies to weekend visiting privileges. She further complained that omission of the word "wife" in one sentence resulted in the document's failure to name her as having primary custody of the children. Provision for health insurance to cover the children's medical expenses as it appeared in the first agreement was also omitted in the amended agreement, although James has carried them on his policy with his employer. On "issues of fact where the chancellor made no specific finding, we proceed on the assumption that the chancellor resolved all such fact issues in favor of [the] appellee, [citations omitted] or at least in a manner consistent with the decree." *Morris v. Stacy*, 641 So. 2d 1194, 1196-97 (Miss. 1994)(quoting *Tedford*, 437 So. 2d at 417). We find no error in the chancellor's denial of Patricia's request to add this provision to the amended version, and find further no merit to her complaints that language in the decree renders it "vague, defective, and somewhat ambiguous."

IV.

¶15. "The question of attorney fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court." *Ferguson v. Ferguson*, 639 So. 2d 921, 937 (Miss. 1994)(citing *Smith v. Smith*, 614 So. 2d 394, 398 (Miss. 1993)); *Kergosien v. Kergosien* 471 So. 2d 1206, 1207 (Miss. 1985). Generally, if a party is financially able to pay an attorney, then an award of such fees is inappropriate. *Ferguson*, 639 So. 2d at 937 (citing *Martin v. Martin*, 566 So. 2d 704, 707 (Miss. 1990)). The award of attorney's fees is governed by (1) the relative financial ability of the parties, (2) the skill and standing of the attorney employed, (3) the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, (4) the time and labor required, (5) the usual and customary charge in the community, and (6) the preclusion of other employment by the attorney due to the acceptance of the case. *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982). Patricia neither established that she was unable to pay attorney fees nor presented evidence of any of the *McKee* factors. Accordingly, the chancellor cannot be held in error for denying her request for attorney fees.

V.

*¶16.* We affirm the chancellor's decision to deny Patricia's request for additional child support based on James' bonus earnings. Further, we find that the chancellor correctly refused to revise the omitted language from the contract since its meaning can be clearly gleaned from the context. Finally, because there was no evidence that Patricia was unable to pay her attorney fees, we cannot hold the chancellor in error for failing to make such an award.

¶17. **JUDGMENT AFFIRMED.**

**LEE, C.J., ROBERTS AND SMITH, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER AND SULLIVAN, P.JJ. PITTMAN AND MILLS, JJ., NOT PARTICIPATING.**

**BANKS, JUSTICE, DISSENTING:**

¶18. Because I believe that the chancellor erred in concluding that the agreed child support decree was unenforceable as written, and that the majority compounds that error and misconstrues our precedents and for other reasons, I dissent.

¶19. First, it should be understood that there is nothing inherently invalid about a child support arrangement which is geared to a percentage of income. Indeed the guidelines approved by our legislature are in terms of percentages. Miss. Code Ann. § 43-19-101 (1972). The majority totally misconstrues the holding of this Court in *Tedford v. Dempsey*, 437 So. 2d 410, 419 (Miss. 1983). In that case, which did not involve an escalation clause, this Court encouraged the use of escalation clauses and explicitly declined to limit a chancellor's discretion as to what the escalator should be tied to as, for example, "inflation rate, father's income, children's expenses." *Id.* at n. 8. The Court referred to an example of a clause providing for a decrease in support as the non-custodial parent's income decreased, without reference to any other factor. *Id*. *Tedford* does not require, as the majority asserts, that, in order to be valid, an escalator must be associated with each of the four enumerated factors in the majority opinion. *See* Majority op. p. 6.

¶20. While any particular percentage escalator, including that specified in the statutory guidelines, may be unreasonable under given circumstances we have never condemned percentages per se. *See Wing v. Wing*, 549 So. 2d 944 (Miss. 1989); *Brown v. Brown*, 566 So. 2d 718 (Miss. 1990); *Aldridge v. Parr*, 396 So. 2d 1027 (Miss. 1983). A percentage award is as easily modified as a fixed amount when there has been a substantial change of conditions. As Patricia points out, our neighboring states have also had no problem approving percentage awards. *Rose v. Rose*, 395 So. 2d 1038 (Ala. 1981); *Stolier v. Stolier*, 357 So. 2d 1334 (La. 1978). Our inquiry then should be limited to the question whether this particular provision was shown to have been unfair or, for some other reason, unenforceable.

¶21. The chancellor found that the use of the term "net pay" might somehow exclude "bonus" pay

and that for that reason the use of "net pay" rather than "adjusted gross income" was fatal to the provision requiring a payment equal to 20 percent of income as opposed to the fixed amount of $400 per month. I disagree. To the extent that the term admits to ambiguity, the chancellor should have arrived at a construction which best fits the intent of the parties. ***Banks v. Banks***, 648 So. 2d 1116 (Miss. 1995); ***Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.,*** 635 So. 2d 1357 (Miss. 1994); ***Hicks v. Bridges***, 580 So. 2d 743 (Miss. 1991); ***Newell v. Hinton,*** 556 So. 2d 1037 (Miss. 1990); ***Hoerner v. First Nat'l Bank of Jackson***, 254 So. 2d 754 (Miss. 1971). There is no evidence of an attempt to do so.

¶22. The term "net pay" sometimes called "take-home pay" is a common enough term to be understood. To be sure, for strict application of the child support guidelines, attention should be paid to the definition of adjusted gross income. The reason for that, however, is that there may be unusual deductions from gross pay which should not be regarded when calculating the minimum. An employee might deflect income to personal purposes which should have no bearing on the obligation of child support. In the instant case, there are several deductions other than those statutorily designated for calculation of adjusted gross income. They range from small amounts for investments to a relatively large amount in repayment of a loan. All of these are deducted to arrive at "net pay" as that term is used on James Bruce's wage statement from his employer. If the present debate involved only those deductions, then there would be room to argue about the intent of the parties. That is not the case, however.

¶23. The primary bone of contention here and the fact fastened upon by the trial court, has to do with some $4,900 in bonus pay. James' wage statements, however, clearly include bonus pay in the gross before deductions. Moreover, the financial declaration forms used in this very trial court specifically include bonuses in gross income. If bonuses are included in the "gross," by what strange construction should they be excluded from the "net"? I suggest that there is none. I would hold that with respect to the bonus pay, the 20 percent provision is fully enforceable. I would remand the case to the chancery court to determine the intent of the parties and construe the decree as to "net pay" with respect to the payroll deductions taken other than those shown on James' W-2 form.

**PRATHER AND SULLIVAN, P.JJ., JOIN THIS OPINION.**

1. Patricia submitted the following figures based on James' 1992 W-2 form:

> Total Wages: $52,734.62
>
> Less Withholdings: $15,597.04
>
> Total AGI: $37,137.58
>
> Child Support Owed: $7,427.52 (based on 20% AGI)
>
> Actually Paid: $5,743.00
>
> Due and Owing: $1,684.52