ISHEE, J.,
 

 for the Court.
 

 ¶ 1. Following a hearing held in Jackson County Chancery Court, Paul J. Webster was ordered to pay one-half of the college tuition and related expenses for both of his two minor children for a total of eight semester hours each. The October 12, 2007, judgment also found Paul in con
 
 *604
 
 tempt of court for failing to pay past-due child support and also awarded Rebecca J. Webster attorney’s fees and expenses incurred in bringing the contempt action. Paul filed a motion to set aside the judgment or, in the alternative, to alter or amend for reconsideration or for a new trial. Rebecca, in response, filed a motion for assessment of additional attorney’s fees. After a motion for continuance was filed and granted, a hearing was held on January 15, 2008, and the judgment was amended on March 5, 2008. The judgment was amended nunc pro tunc to the earlier October 12, 2007, judgment. In the amended judgment, the chancery court found Paul in contempt for failure to pay sums due to Rebecca under the property settlement agreement and for failure to pay sums set out in the May 10, 2000, decree. As a result, Paul was ordered to pay $2,142 in attorney’s fees and expenses to Rebecca. The judgment was also amended to reflect that Paul was only responsible for one-half of the college and school expenses until the child reaches the age of majority.
 
 [1]
 
 It is from that judgment that Paul now appeals.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Paul and Rebecca were married on February 14, 1981. Three children were born of the marriage: Paul Jr., born on July 11,1982; Jordan, born on January 13, 1989; and Sydney, born February 6, 1995. Paul and Rebecca were subsequently granted a divorce on the ground of irreconcilable differences on June 2, 2000. Paul and Rebecca were granted joint physical and legal custody of the children, with Paul having the paramount care, custody, and control of the minor children. Further, each party was ordered to pay the sum of $200 dollars bi-weekly in child support to the other party during his or her period of custody. Paul also agreed to be entirely responsible for the minor children’s daycare expenses, with the parties equally sharing all other expenses related to the children, whether medical, dental, ocular, and any other health-related expenses. The judgment further ordered that “[sjhould the parties obtain health insurance, then each will be responsible for one-half of the premium and any remainder after insurance has paid on the above [medical expenses] will be split equally along with the clothing and school expense for the children, extracurricular lessons to include dance lessons and guitar lessons or other lessons should the children so choose.”
 

 ¶ 3. Rebecca filed a complaint for citation of contempt, modification of final judgment of divorce, and other relief on July 9, 2007. Rebecca asked the court for $800 plus interest owed by Paul for the children’s clothing, school expenses, and extracurricular lessons, together with any sums due and owing to her by Paul. In the complaint, Rebecca also sought legal and physical custody of both Jordan and Sydney. She also sought contribution from Paul for Jordan’s college education, beginning in August 2007.
 

 ¶ 4. After a hearing on September 10, 2007, the chancery court entered a judgment on October 12, 2007. At the hearing, both parties acknowledged that they had resolved almost every issue and dictated
 
 *605
 
 into the record the terms of the agreed upon issues. The parties, both represented by counsel at the hearing, agreed to the following terms: (1) Paul agreed to pay $1,451.50 to Rebecca for his half of Jordan’s fall 2007 semester of college; (2) Paul agreed to pay $894.15 to Rebecca, which reflected his half of Jordan’s miscellaneous fall 2007 college-related expenses; (3) both Paul and Rebecca agreed to pay $1,451.50 to the University of Mississippi for the spring 2008 semester of college, and beginning in October 2007, each party agreed to send $100 per month to Jordan for miscellaneous expenses; (4) Paul and Rebecca incorporated the same terms and provisions as the ones contained in the judgment of divorce regarding medical care of the two minor children; and (5) Paul and Rebecca agreed to maintain joint legal and physical custody of the minor children but eliminated the provision regarding extracurricular clothing and school expenses for Sydney contained in the judgment of divorce. The only issues submitted to the chancery court for a determination were whether to grant: (1) Rebecca’s request for reimbursement in the amount of $1,083.01, which represented half of clothing, school, and extracurricular purchases she made on behalf of the minor children from June 2006 until September 2007; (2) Rebecca’s request for attorney’s fees and costs in bringing the action; and (3) future college tuition and expenses for Jordan. The chancery court ordered each party to pay one-half of the normal college tuition and college-related expenses for both Jordan and Sydney, and Paul was ordered to pay $1,083.01 to Rebecca for expenses incurred by her for the two minor children from June 2006 through September 2007. Rebecca was not awarded attorney’s fees in the original October 12, 2007, judgment, nor did the original judgment find Paul in contempt.
 

 ¶ 5. On October 19, 2007, Paul filed a motion to set aside the judgment or, in the alternative, to alter or amend for reconsideration or for a new trial. Rebecca, in response, filed a motion for assessment of additional attorney’s fees. Rebecca claimed that Paul’s motion was without merit and made for the sole purpose of vexation and delay. She further asserted Paul had failed to comply with the orders and judgments of the chancery court. After a motion for a continuance was filed and granted, a hearing was held on January 15, 2008, and the judgment was amended on March 5, 2008. The judgment was amended nunc pro tunc to the earlier October 12, 2007, judgment. In the amended judgment, the chancery court found Paul in contempt for failure to pay sums due to Rebecca under the property settlement agreement and in contempt for failure to pay sums set out in the May 10, 2000, decree. As a result, Paul was ordered to pay $2,142 in attorney’s fees and expenses to Rebecca. The judgment was also amended to reflect that Paul was only responsible for one-half of college and school expenses until the child reaches the age of majority. It is from that judgment that Paul now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 6. A chancery court’s findings of fact will generally not be overturned on appeal unless they are found to be manifestly wrong.
 
 Fancher v. Pell,
 
 831 So.2d 1137, 1140(¶ 15) (Miss.2002) (citing
 
 Nichols v. Tedder,
 
 547 So.2d 766, 781 (Miss.1989)). An appellate court “will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 R.K. v. J.K.,
 
 946 So.2d 764, 772(¶ 17) (Miss.2007) (citing
 
 Mizell v. Mi-zell,
 
 708 So.2d 55, 59(¶ 13) (Miss.1998)).
 

 
 *606
 
 DISCUSSION
 

 I. College Expenses
 

 ¶ 7. Paul argues that the chancery court failed to consider Jordan’s aptitude for attending college and that no evidence was presented to demonstrate his son’s ability to successfully complete college-level courses. Paul alleges that Rebecca failed to present the chancery court with proof of the actual cost of providing Jordan with a college education. Paul points out that the numbers provided by Rebecca were merely estimates and not actual expenses incurred. Therefore, Paul contends that Rebecca has failed to meet her burden of proof. Further, Paul claims that the chancery court failed to consider his inability to afford such an expense. Paul contends that this inability to pay is demonstrated by his earnings of $4,000 per month and expenses of $4,896 per month. Paul contends that the chancery court also failed to consider that he provided Jordan with a summer job which allowed Jordan to earn $3,000 to $4,000, which could have been put toward Jordan’s college expenses.
 

 ¶ 8. Rebecca argues that Paul had previously agreed to pay his share of Jordan’s expenses for his first two semesters at the University of Mississippi. Therefore, Rebecca claims that Paul should be required to abide by the previous agreement. In response to Paul assertions, Rebecca contends that Paul had sufficient notice that Jordan had plans to attend college. Rebecca points out that Paul received an itemized letter detailing Jordan’s expenses for college prep courses one year before Jordan began college. Additionally, Rebecca asserts that she presented sufficient proof of Jordan’s aptitude and ability to attend college and that she presented Paul with a copy of Jordan’s acceptance letter three months prior to her filing a complaint with the chancery court. In addition, Rebecca contends that Paul was aware of the actual expenses totaling $16,206 for Jordan’s first year of college, as exhibited by the May 21, 2007, letter which outlined his financial aid. Rebecca also points out that Paul would only be responsible for a small portion of the bill as his half would only be $1,451.50 for the first semester of college, after deducting the amount Jordan received in scholarships, grants, and loans.
 

 ¶ 9. It is unclear whether Paul is objecting only to future college expenses or to both college expenses already paid for the first two semesters in addition to future college expenses. In Paul’s brief, he addresses whether his minor son, Jordan, had an aptitude for attending college. Therefore, this Court will address both the college expenses previously paid for the first year of college and the future payments ordered until Jordan reaches the age of majority.
 

 ¶ 10. Ordinarily, “the law favors the settlement of disputes by agreement of the parties ... [and] will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching.”
 
 Chantey Music Publ’g., Inc. v. Malaco, Inc.,
 
 915 So.2d 1052, 1055(¶ 11) (Miss.2005) (citing
 
 Hastings v. Guillot,
 
 825 So.2d 20, 24(¶ 24) (Miss.2002)). Further, “[i]n property and financial matters between the divorcing spouses themselves there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude.”
 
 Speed v. Speed,
 
 757 So.2d 221, 224-25(¶ 8) (Miss.2000). “When the parties have reached [an] agreement and the chancery court has approved it, we ought to enforce it and take as dim [of] a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.”
 
 Id.
 
 (citing
 
 Bell v. Bell,
 
 572 So.2d 841, 844 (Miss.1990)).
 

 
 *607
 
 ¶ 11. In this case, Paul agreed at the September 10, 2007, hearing to pay the fall 2007 and spring 2008 college tuition and expenses. This was an agreement reached between the two parties and approved by the chancery court. There was no allegation or proof that there was “any fraud, mistake, or overreaching.”
 
 Chantey Music Publ'g,
 
 915 So.2d at 1055(¶ 11). As such, there was no error in approving the agreement made by the two parties to share the costs of the minor child’s first two semesters of college and the related expenses.
 

 ¶ 12. The Mississippi Supreme Court has, in the past, found that a parent may be required to pay both college tuition and additional expenses incurred by his or her minor child while attending college.
 
 Lawrence v. Lawrence,
 
 574 So.2d 1376, 1382 (Miss.1991) (citing
 
 Wray v. Langston,
 
 380 So.2d 1262, 1264 (Miss.1980)). Additionally, “[w]hen a father’s financial ability is ample to provide a college education and the child shows an [aptitude] for such, the court may in its discretion, after hearing, require the father to provide such education.”
 
 Saliba v.
 
 Saliba, 753 So.2d 1095, 1101(¶ 21) (Miss.2000). However, a father’s or mother’s duty to provide a college education to a minor child “is dependent upon the proof and circumstances of each case.”
 
 Id.
 
 (citing
 
 Rankin v. Bobo,
 
 410 So.2d 1326, 1328 (Miss.1982)).
 

 ¶ 13. In the case at bar, Jordan received various scholarships, grants, and loans, which helped to pay a large portion of his tuition. Further, at the time of the hearing on January 15, 2008, Jordan had already successfully completed one semester of college, apparently retaining the various scholarships, grants, and loans he had received earlier. Paul argues on appeal that Jordan’s aptitude for college was not clearly demonstrated. However, Jordan’s aptitude appears to be demonstrated both by his ability to maintain his scholarships, grants, and loans and by his apparent current status as an enrolled student. Paul and Rebecca equally split the remaining expense of Jordan’s tuition, each paying $1,451.50 per semester. In addition, each party was ordered to pay half of any of Jordan’s college-related expenses. This Court cannot find that the chancery court erred in ordering both parties to split equally the cost of the minor children’s college tuition and expenses. This issue is without merit.
 

 II. Contempt Finding
 

 ¶ 14. Paul argues on appeal that the chancery court erred in accepting the document entitled “unpaid receipts” as sufficient proof of Rebecca’s expenditures made on behalf of the children from June 2006 through May 2007. Paul argues that Rebecca should have been required to offer receipts or cancelled checks in support of the purchases she claimed to have made during that time. Paul contends that Rebecca submitted expenses which were not school, clothing, or payments for extracurricular lessons. Paul points out that these expenditures included haircuts, brake jobs, makeup, a cell phone, a Halloween costume, a tennis grip, and repair of a tennis racquet. Paul submits that the final judgment of divorce required him to pay as follows:
 

 [s]hould the parties obtain health insurance, then each will be responsible for one-half of the premium and any remainder after insurance has paid on the above will be split equally along with clothing and school expense[s] for the children, extra-curricular lessons to include dance lessons and guitar lessons or other lessons should the children so choose.
 

 Therefore, Paul argues that the judgment does not require him to pay these ex
 
 *608
 
 penses; thus, he cannot be found in contempt of court for failure to pay. Paul points to
 
 Young v. Deaton,
 
 766 So.2d 819 (Miss.Ct.App.2000) in support of his argument. Paul contends that the judgment must be sufficiently specific as to the duties of a party in order for a party to be found in contempt. Paul alleges that the chancery court also erred in awarding Rebecca a judgment amount that exceeded the sum of the $800 which was requested in her complaint. Paul urges that the chancery court committed error in failing to credit him for expenses he paid for the children’s clothing. Lastly, Paul points out that he and Rebecca shared joint legal and physical custody of the children and that Mississippi Code Annotated section 93-5-24 (Rev.2004) requires both parents to cooperate and share in the decision making regarding the children. Paul contends that Rebecca was required to consult with him before making purchases, but she failed to confer with him regarding the purchases.
 

 ¶ 15. In response to Paul’s contention that she failed to sufficiently prove the expenditures made on behalf of the children, Rebecca counters that he failed to object to the document entitled “unpaid receipts” being admitted into evidence. Therefore, Rebecca contends that he should be barred from raising the issue now for the first time on appeal. Ory
 
 v. Ory,
 
 936 So.2d 405, 409(¶ 9) (Miss.Ct.App.2006). Rebecca also argues it was not error for the chancery court to award her more than the specific $800 that she listed in her complaint. Rebecca points out that in her complaint that she also asked for relief against Paul “for all sums due and owing to her by the Defendant as shown at a hearing hereon, including interest on all sums due and owing, reasonable attorney’s fees and all costs.” Rebecca claims the chancery court did not err in failing to credit Paul for expenses he incurred on behalf of the children. Rebecca points out that Paul did not make a request to submit this evidence until after the trial was concluded. Instead, Paul’s new counsel after the trial submitted a motion for reconsideration that requested the credit for expenditures. Therefore, Rebecca argues it was not error for the chancery court to refuse admission of evidence not presented at trial. Further, Rebecca contends that the chancery court properly found Paul in contempt because he failed to pay what was owed to her and failed to establish a specific inability to pay. Rebecca argues that Paul had the ability to pay the amount owed, as he had $39,000 in savings.
 

 ¶ 16. “The purpose of civil contempt is to enforce or coerce obedience to the orders of the court.”
 
 Lahmann v. Hallmon,
 
 722 So.2d 614, 620(¶ 19) (Miss.1998). “Contempt matters are committed to the substantial discretion of the chancellor.”
 
 Durr v. Durr,
 
 912 So.2d 1033, 1039(¶ 17) (Miss.Ct.App.2005) (citing
 
 Lahmann,
 
 722 So.2d at 620(¶ 19)). An appellate court will not reverse a chancery court’s finding of contempt when the findings are “supported by substantial credible evidence.”
 
 Varner v. Varner,
 
 666 So.2d 493, 496 (Miss.1995) (citing
 
 Shipley v. Ferguson,
 
 638 So.2d 1295, 1297 (Miss.1994)). “In a contempt action, involving unpaid child support, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made.”
 
 Lahmann,
 
 722 So.2d at 620(¶ 19) (citing
 
 Guthrie v. Guthrie,
 
 537 So.2d 886, 888 (Miss.1989)). The burden then shifts to the other party to demonstrate a defense for their failure to pay, such as inability to pay, by clear and convincing evidence.
 
 Id.
 
 In the case at bar, the chancery court had substantial, credible evidence before it to support its finding of contempt. Rebecca introduced
 
 *609
 
 into evidence, without objection from Paul, a list reflecting the items she had purchased on behalf of the minor children. Paul failed to demonstrate by clear and convincing evidence a defense to Rebecca’s complaint for contempt for his failure to pay past-due child support. Therefore, we find that the chancery court properly found Paul to be in contempt. This issue is without merit.
 

 III. Attorney’s Fees and Expenses
 

 ¶ 17. Paul argues that Rebecca failed to present testimony or proof under the
 
 McKee
 
 factors as to the nature of services rendered by her attorney, the attorney’s skill, the novelty of the issues, and the amount of time the attorney spent on each issue at trial.
 
 McKee v. McKee,
 
 418 So.2d 764, 767 (Miss.1982). Paul contends that there was no finding by the chancery court that Rebecca’s attorney’s fees were reasonable. Paul further points out that Rebecca failed to show her inability to pay her own attorney’s fees; she was capable of paying her attorney’s fees; and the chancery court erred in awarding her attorney’s fees. Paul asserts that it would be inequitable to require him to pay Rebecca’s attorney’s fees for her unsuccessful attempt to modify the custody agreement. Paul theorizes that this would encourage Rebecca to file frivolous custody modification suits in the future.
 

 ¶ 18. Rebecca argues in response that she is entitled to attorney’s fees without a showing of need because Paul was found to be in contempt of court. Rebecca maintains that it was proper for the chancery court to award attorney’s fees for her successful action to obtain the past-due child support. Rebecca contends that the chancery court was not required to apply
 
 McKee
 
 in awarding her attorney’s fees, citing as authority
 
 Bounds v. Bounds,
 
 935 So.2d 407, 412 (¶¶ 18-19) (Miss.Ct.App.2006). Rebecca also asks for attorney’s fees in connection with this appeal. Rebecca argues that Paul’s appeal is frivolous, thus making attorney’s fees on appeal appropriate.
 

 ¶ 19. “The [s]upreme [c]ourt has stated that ‘contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are.’ ”
 
 Elliott v. Rogers,
 
 775 So.2d 1285, 1290(¶ 22) (Miss.Ct.App.2000). “The general rule in divorce and child custody actions is that appropriate attorney’s fees should be awarded in an amount to secure a competent attorney.”
 
 Bounds,
 
 935 So.2d at 412(¶ 18) (citing
 
 Mabus v. Mabus,
 
 910 So.2d 486, 490(¶ 13) (Miss.2005)). “However, in contempt actions, attorney’s fees are awarded ‘to make the plaintiff whole.’ ”
 
 Id.
 
 (quoting
 
 Mabus,
 
 910 So.2d at 490(¶ 13)). When a party is held in contempt for violating a valid judgment of the court, then attorney’s fees should be awarded to the party that has been forced to seek the court’s enforcement of its own judgment.
 
 Elliott,
 
 775 So.2d at 1290(¶ 25) (citing
 
 Varner,
 
 666 So.2d at 498).
 

 ¶ 20. In the amended judgment of March 5, 2008, which was nunc pro tunc to October 12, 2007, the chancery court found Paul to be in contempt of court for failure to pay those sums set out in the May 10, 2000, decree. At the hearing on September 10, 2007, Rebecca entered into evidence the hourly fee agreement she signed with her attorney. The agreement provided for a $2,000 non-refundable retainer and a $200 hourly fee. At the hearing, Rebecca’s attorney related on the record that there was a $97 filing fee and a $45 service of process fee. The chancery court ordered in the amended judgment that Paul pay the $2,000 retainer fee plus the
 
 *610
 
 court costs and filing fees of $142. This amount reflected Rebecca’s actual cost in bringing the action to court. Thus, the award by the chancery court “made Rebecca whole” for her costs in bringing the contempt action. In the case at bar, Paul does not specify in his argument the reason why he argues that the fees were unreasonable, only stating that there was no consideration of the
 
 McKee
 
 factors in determining the award of attorney’s fees and that Rebecca failed to provide sufficient proof under the
 
 McKee
 
 factors. This Court finds no error in the chancery court’s award of attorney’s fees in the contempt action against Paul, and this issue is without merit.
 

 ¶ 21. Additionally, Rebecca requests attorney’s fees in connection with this appeal. As Rebecca argues in her brief, “[t]his Court has generally awarded attorney’s fees on appeal in the amount of one-half of what was awarded in the lower court.”
 
 Lauro v. Lauro,
 
 924 So.2d 584, 592(¶ 33) (Miss.Ct.App.2006) (citing
 
 Monroe v. Monroe,
 
 745 So.2d 249, 253(¶ 17) (Miss.1999)). Therefore, this Court awards $1,071 to Rebecca for her attorney’s fees associated with the cost of this appeal.
 

 ¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. APPEL-LEE’S MOTION FOR ATTORNEY’S FEES ON APPEAL IS GRANTED IN THE AMOUNT OF $1,071. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ, IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The original judgment orders Paul to pay one-half the college and college-related expenses incurred for or on behalf of both of the minor children for a total of eight semester hours each. However, the amended judgment only makes reference to the child. It is assumed for purposes of this appeal that the amended judgment orders Paul to pay college expenses for his two minor children, Jordan and Sydney, until they both reach the age of majority.