GRIFFIS, P. J.,
for the Court:
¶ 1. Teresa Zweber appeals a judgment of contempt and related money judgment. The chancellor held Teresa in contempt for nonpayment of her daughter’s college expenses and ordered she pay her ex-husband, Charles Zweber, for outstanding college expenses, attorney’s fees for the contempt action, and attorney’s fees for a motion to compel discovery. On cross-appeal, Charles contends that the chancery court erred in awarding him only a portion of the attorney’s fees for his contempt action. Both parties request we award attorney’s fees on appeal.
FACTS
¶ 2. In 2006, Teresa and Charles agreed to a divorce on the ground of irreconcilable differences. They asked the chancellor to resolve the issues of child custody, child *1147 support, property division, alimony, and attorney’s fees. The chancellor appointed a special master to preside over the matter. The special master then heard and decided the issues presented, the final terms of which were approved as to form by the parties’ attorneys, approved by the chancellor, and incorporated into the parties’ divorce judgment.
¶ 3. Pursuant to the judgment, the parties received joint legal custody of their two children — Daniel, born in 1988, and Lindsey, born in 1991. Teresa was awarded primary-physical custody of their son, Daniel; Charles was awarded primary-physical custody of their daughter, Lindsey.[1] Teresa was ordered to pay Charles $176.62 per month in child support for Lindsey, which represented “14%” of Teresa’s adjusted gross income; Charles was ordered to pay Teresa $539.43 per month in child support for Daniel, which represented “14%” of Charles’s adjusted gross income. The chancellor also offset the amounts owed, and Charles’s monthly child-support payments were reduced to $362.81 with Teresa’s child-support payments postponed until Daniel reached emancipation or the chancery court ordered otherwise.
¶ 4. In October 2009, Charles filed a motion for contempt and modification of the divorce judgment. Charles alleged Teresa had “willfully failed to pay all of the college expenses for [Lindsey] as ordered” and had refused “to pay any additional expenses despite full information regarding the fees and costs, as well as, receipts provided by [Charles] showing payments already made.” Charles also requested the judgment be modified so as to limit the parties’ obligation to pay college expenses for the children up to the age of twenty-one, and he requested Teresa’s child-support obligation be increased.
¶ 5. Teresa filed an answer and a counter-motion for contempt. She claimed that the term “college expenses,” as used in the divorce agreement, “only included charges created by the college for the child to pay, not incidental other expenses of the child such as a computer, flying lessons, etc.” Teresa also claimed Charles was in contempt for failure to pay Daniel’s “[f]all and [s]pring college tuition and other college expenses.”
¶ 6. Discovery ensued, and each party filed motions to compel discovery responses from the other party. The chancellor granted Charles’s motion and denied Teresa’s motion. Following discovery, the chancery court heard evidence on the parties’ respective contempt allegations and on Charles’s motion for modification of the divorce judgment.
¶ 7. According to the record, Lindsey, who had just started the tenth grade when her parents divorced, graduated from high school in the spring of 2009. Lindsey elected to attend Delta State University in Cleveland, Mississippi, beginning in the fall of 2009. She was awarded a one-time $1,000 scholarship for having served as valedictorian of her high school class, a yearly $1,000 scholarship for her “ACT score,” a yearly $1,200 choir scholarship, and a tuition-assistance grant.
¶8. Lindsey enrolled in Delta State’s commercial aviation program, seeking a dual major in flight operations and aviation management. For a degree in flight operations, students must take a number of flight-training courses, which begin the first semester of their freshman year at Delta State and conclude in their senior *1148 year. The costs associated with the flight-training courses are not covered by Delta State’s tuition. The cost prospectus issued by Delta State’s Commercial Aviation Department for the year 2009-2010 shows that in addition to tuition, meals, boarding, etc., students can expect to spend approximately $55,000 for all of the program’s required flight-training courses.
¶ 9. In late August or early September 2009, Charles sent Teresa a copy of a bill from Delta State’s Student Business Services for Lindsey’s [f]all 2009 semester. The bill outlined the costs and fees for the following items: dorm room, meal plan, “Okra Green Anywhere” plan, orientation fee, and tuition. The bill listed $5,265 as the total costs for Lindsey’s fall semester. When adjusted for Lindsey’s scholarship and grant awards for the semester, the total amount was $3,415.
¶ 10. Charles testified that in addition to the bill from business services, he sent Teresa a number of spreadsheets he created that listed not only the charges for the above items, but all of Lindsey’s “school costs” for “Fall 2009.” The first spreadsheet indicated that $15,251.03 was the total cost for Lindsey’s 2009 fall semester, and that Teresa’s one-third share amounted to $5,083.68. The other spreadsheet introduced by Charles listed the same items as the first spreadsheet, but it calculated a higher total amount. Charles also introduced a spreadsheet that included the various fees for the private-flying lessons that Lindsey had received prior to starting college. It listed $2,610.47 as the total cost for Lindsey’s private-flying lessons with Teresa’s share of the total cost calculated to be $870.16.
¶ 11. Teresa claimed that she was responsible only for the charges listed in the bill from Delta State’s business services. Teresa testified that when she received a copy of the bill from Charles, she calculated her one-third portion of the $3,415 total amount, divided that amount by twelve months, and began sending Charles monthly payments in the amount of $94.86. According to Teresa, this same procedure is what Charles did to pay his share of Daniel’s college expenses.
¶ 12. After the hearing, on July 30, 2010, the chancellor entered the following judgment:
2. [Teresa] is found to be in contempt of court for her failure to pay the college expenses of Lindsey Zweber. [Charles] is awarded the sum of $5,573.53 which represents the unpaid amounts through the date of trial less deductions for payments previously made by [Teresa] and an offset for college expenses for Daniel through the Spring 2010 semester. The court finds that the flying lessons obtained prior to entry into college were necessary for her college degree and therefore, are included in the amount owed to [Charles].
3. [Charles]’s request to modify the Judgment of Divorce to limit the time the parties are required to pay college expenses for the children is denied and the Court will not limit the number of years at this point.
4. [Charles]’s request to modify child support is denied since the payment of college expenses is in the nature of [child] support.
5. [Charles] is awarded legal fees in the sum of $1,000.00 for the motion to compel filed in this matter.
6. [Charles] is further awarded legal fees in the sum of $2,000.00 for [Teresa]’s contempt.
7. [Charles] is awarded a total money judgment in the sum of $8,573.53. Said amount is due and payable *1149 within ninety (90) days of the entry of this Judgment.
¶ 13. Teresa then filed a motion for reconsideration and/or, in the alternative, a new trial. 'She asked the chancellor to nullify the requirement that both parties pay for each child’s college education beyond their twenty-first birthdays. The chancellor denied Teresa’s motion for reconsideration or a new trial. However, the chancellor struck from the judgment the requirement that both parties continue to pay for the children’s college educations beyond attaining the age of twenty-one.
ANALYSIS

1. Whether the chancellor erred in interpreting the provision of the Final Judgment of Divorce concerning what college expenses were to be paid by the parties.

¶ 14. In domestic relations cases, normally, an appellate court will not disturb a chancellor’s judgment when it is supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Benal v. Benal, 22 So.3d 369, 372 (¶ 4) (Miss.Ct.App.2009) (citation omitted). However, questions of law are reviewed de novo. Price v. Price, 22 So.3d 331, 332 (¶ 8) (Miss.Ct.App.2009) (citation omitted).
1115. Teresa argues that the chancellor erred in his interpretation of the divorce judgment’s provision on the payment of college expenses. This presents a question of law; thus, we review this issue de novo. In Meek v. Warren, 726 So.2d 1292, 1293-94 (¶ 3) (Miss.Ct.App.1998), this Court held:
Because the resolution must be reached via the interpretation of a divorce judgment, our task is to view the terms of the document, find their legal meaning, and adjudge their enforceability. The familiar manifest error/substantial evidence rules have no application to such questions of law. Consequently, our review is de novo, provided only that we read the entire settlement agreement/divorce judgment and in the best light possible, attributing to its provisions the most coherent and reasonable scheme they may yield.
(Citation omitted).
¶ 16. The essence of the question presented in this issue is whether Lindsey’s expenses for “flight lessons” are included in the definition of college expenses. Paragraph nine of the final judgment of divorce reads:
The Husband and Wife shall each be required to pay for the cost of the minor children, with Husband paying two-thirds (2/3) of the expense and Wife paying one-third (1/3) of the expense, based on the cost of the child attending college at a four[-]year state[-]supported institution in such state as the child is a resident of. All costs are to be based on the average costs of meals, tuition, books and room, published in a state[-]supported catalog and not to exceed the cost of a four[-]year state[-]supported institution. This obligation shall continue even if the child is over twenty-one (21) years of age prior to the completion of college.
¶ 17. The chancellor determined that the flight lessons were included within the definition of college expenses and were required to be paid by the parents. The Delta State catalog revealed that Lindsey’s choice of the commercial aviation program required the expenditure of additional expenses, i.e., flying lessons. The cost prospectus indicated that commercial aviation students could expect to spend an additional $55,000 in required flying lessons. In *1150 deed, it does make sense that a student would have to learn to fly before he or she could graduate from the commercial aviation program.
¶ 18. In Pass v. Pass, 238 Miss. 449, 458, 118 So.2d 769, 773 (1960), the Mississippi Supreme Court recognized that parents have an obligation, in certain circumstances, to provide for their child’s college education. There have been a number of appellate cases that have considered whether the parent had a obligation to pay college expenses[2] as well as what expenses must be paid.[3]
¶ 19. Here, the chancellor determined that the parties had the ability to pay for Lindsey’s college education; therefore, he obligated them to provide for Lindsey’s college education. Lindsey’s enrollment in the commercial aviation program at Delta State required Lindsey to obtain flying lessons. The cost of Lindsey’s college education was not simply limited to meals, tuition, books, and room. We agree with the chancellor that the cost of Lindsey’s flying lessons, which were required by the university, were reasonable and necessary college expenses. Therefore, the first sentence of paragraph nine of the final judgment of divorce required the payment of these expenses.
¶20. In Lawrence v. Lawrence, 574 So.2d 1376, 1382 (Miss.1991), the supreme court held: “Though college expenses are not technically ‘child support,’ a parent may be ordered by the court to pay them. A parent may also be ordered to pay some portion of the resulting expenses of college, in addition just to tuition.” (Citing Wray v. Langston, 380 So.2d 1262, 1264 (Miss.1980)). Today, the cost of a college education is not simply limited to meals, tuition, books, and room. Instead, all related fees and expenses of the child’s college education must be considered. This includes the direct expenses charged by the college or university (i.e., tuition, on-campus housing, fees, books, or other related expenses), as well as indirect expenses that are necessary for the child to live as a college student (i.e., off-campus housing, meals, transportation, insurance, computers, clothing, and personal expenses). Indeed, all of these costs are required for the child to complete successfully his or her college education. We recognize that not every parent can afford to pay these costs. The law provides that the chancellor, not this Court, is in the best position to make this determination. Based on our de novo review, we determine that the chancellor’s decision on this issue was correct. We therefore affirm the chancellor’s judgment.

2. Whether the chancellor erred in holding Teresa in contempt.

¶ 21. Teresa argues that the chancellor’s finding of contempt was not appropriate because there was no willful violation of the court’s order. She continues that the “vagueness of the ... Final Judgment of Divorce and the circumstances of the case prevents a finding of willful contempt against Teresa.” She adds that the chancellor’s interpretation is an unenforceable escalation clause. See Bruce v. Bruce, 687 So.2d 1199, 1202 (Miss.1996) (additional support clause void, because it was “uncer *1151 tain and indefinite with regard to escalation each year based on net pay”). Teresa asks this Court to reverse the chancellor’s award of $2,000 in attorney’s fees to Charles.
¶ 22. On cross-appeal, Charles argues that the chancellor abused his discretion by awarding only a portion of the attorney’s fees incurred. Charles claims that he incurred attorney’s fees in the amount of $6,184.50 in the prosecution of Teresa’s contempt. He asks this Court to reverse the chancellor’s award of partial fees and render an award of attorney’s fees in the amount of $6,184.50.
¶23. The standard of review for this issue requires that this Court not disturb the chancellor’s judgment when it is supported by substantial credible evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Benal, 22 So.3d at 372 (¶ 4).
¶ 24. To support her argument, Teresa cites Newell v. Hinton, 556 So.2d 1037, 1044-45 (Miss.1990), where the supreme court held:
Even when there has been established a prima facie case of contempt, the defendant may avoid judgment of contempt by establishing that he is without present ability to discharge his obligation. If the contemnor raises this as a defense, he has the burden of proving his inability to pay, and such showing must be made with particularity and not in general terms.
There are other defenses as well. For example, the defendant may show that he was not guilty of willful or deliberate violation of the prior judgment or a decree. The burden of the defendant in raising this defense, however, is not nearly as great as the defendant who claims he is without ability to pay. Consequently, it is appropriate that this defense be viewed against the “extremely lenient view this Court and the courts of this state have taken of contempt proceedings in general.” Furthermore, a contemnor also has available to him the traditional notion of “clean hands” as a defense. Vagueness or the lack of specificity of the decree gives the contemnor another avenue for defense as well.
(Citations omitted) (emphasis added).
¶ 25. To support his argument, Charles cites Webster v. Webster, 17 So.3d 602, 608 (¶ 16) (Miss.Ct.App.2009), where this Court held:
The purpose of civil contempt is to enforce or coerce obedience to the orders of the court. Contempt matters are committed to the substantial discretion of the chancellor. An appellate court will not reverse a chancery court’s finding of contempt when the findings are supported by substantial credible evidence. In a contempt action, involving unpaid child support, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made. The burden then shifts to the other party to demonstrate a defense for their failure to pay, such as inability to pay, by clear and convincing evidence. In the case at bar, the chancery court had substantial, credible evidence before it to support its finding of contempt.
(Citations and quotations omitted).
¶ 26. In the previous section, this Court interpreted paragraph nine in the same manner as the chancellor. Therefore, we have found that there was substantial evidence to support the chancellor’s decision to hold Teresa in contempt. In deciding Teresa’s issue on appeal, we cannot find that the chancellor abused his discretion in awarding attorney’s fees in *1152 the amount of $2,000 for Teresa’s contempt. Likewise, in deciding Charles’s cross-appeal, we cannot find that the chancellor abused his discretion in awarding only $2,000 in attorney’s fees.
¶ 27. We also reject Teresa’s claim that the chancellor’s interpretation of paragraph nine was an unenforceable escalation clause. In Bruce, the supreme court considered a “bonus pay” provision in the child-support calculation. Bruce, 687 So.2d at 1202. The cost of a college education is expensive but it is not “uncertain and indefinite with regard to escalation.” Id. (citations omitted).
¶28. Therefore, we find no merit to this issue and affirm the chancellor’s judgment on cross-appeal.

3. Whether the chancellor erred in not holding Charles in contempt for nonpayment of college expenses.

¶ 29. Teresa claims that Charles admitted he did not pay Teresa for amounts due on Daniel’s college expenses. She claims that the chancellor erred in not holding Charles in contempt. Charles counters with an argument that he gave Teresa credit for the amounts that he owed to her, and after all credits or offsets, Teresa owed Charles a balance.
¶ 80. Teresa adds to her argument, stating: “Each payment that becomes due and remains unpaid becomes a judgment against the supporting parent.” Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992) (citations and quotations omitted). Teresa argues that it was not proper for Charles to simply offset the amount he owed her by the amount she owed him. We do not agree.
¶ 81. For reasons not set forth in this record, the chancellor chose to separate the children in the final divorce decree. The chancellor split custody between the parents. The chancellor appears to have properly determined child support based on the income of each parent, and most importantly, the chancellor determined that the payment of the amounts owed in child support could be offset. Again, in this contempt proceeding, the chancellor appears to have made the proper financial calculations and rendered a judgment based on the proper amounts owed after considering an offset. Teresa has not presented us with authority that would lead us to find the chancellor abused his discretion in offsetting amounts owed between the parties. We have not found authority that would require us to find the chancellor was in error. Therefore, we find no error in this issue.
A Whether the chancellor erred in awarding legal expenses to Charles with regard to his motion to compel.
¶ 32. Teresa claims that the chancellor erred in awarding Charles $1,000 for his attorney’s fees incurred in bringing a motion to compel against Teresa to compel her production of credit card statements.
¶ 33. The chancellor granted the motion to compel and held the issue of an award of attorney’s fees in abeyance until the trial. The final judgment awarded $1,000 in attorney’s fees. Mississippi Rule of Civil Procedure 37 provides for the “Failure to Make or Cooperate in Discovery: Sanctions.” If the court grants the motion to compel discovery, Rule 37(a)(4) provides:
[T]he court shall ... require the party ... whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney’s fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
*1153 M.R.C.P. 37(a)(4). The wording of Rule 37(a)(4) makes the award of attorney’s fees mandatory. Therefore, we cannot find that the chancellor abused his discretion here in the award of such sanctions. Accordingly, this issue has no merit.

5. Whether Charles is entitled to attorney’s fees for this appeal.

¶ 34. Charles asked for an award of attorney’s fees in connection with this appeal. “This Court has generally awarded attorney’s fees on appeal in the amount of one-half of what was awarded in the lower court.” Lauro v. Lauro, 924 So.2d 584, 592 (¶ 33) (Miss.Ct.App.2006) (citing Monroe v. Monroe, 745 So.2d 249, 253 (¶ 17) (Miss.1999)). Therefore, this Court awards $1,000 to Charles for his attorney’s fees associated with the cost of this appeal.
¶ 35. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. THE APPELLEE IS AWARDED ATTORNEY’S FEES ON APPEAL IN THE AMOUNT OF $1,000. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BARNES, ROBERTS, MAXWELL AND RUSSELL, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND IRVING, P.J. FAIR, J., NOT PARTICIPATING.

. The record indicates Teresa and her son, Daniel, moved from the marital home in De-Soto County, Mississippi, to Minnesota sometime shortly before the divorce was finalized or soon thereafter.

. See, e.g., Lawrence v. Lawrence, 574 So.2d 1376, 1382 (Miss.1991) (A parent may be ordered to pay not only tuition but related expenses.); Southerland v. Southerland, 816 So.2d 1004, 1005-06 (¶ 8) (Miss.2002) (Parents agreed to send their child to private school.).

. See, e.g., Rankin v. Bobo, 410 So.2d 1326, 1329 (Miss.1982) (sorority fees); Wallace v. Wallace, 965 So.2d 737, 747 (¶¶ 37-38) (Miss.Ct.App.2007) (transportation costs).